# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEFFREY MICHAEL HATCH,

        Defendant-Appellant.

UNPUBLISHED
July 14, 2015

No.   321038
Huron Circuit Court
LC No.   13-305716-FH

Before:  HOEKSTRA, P.J., and JANSEN and METER, JJ.

PER CURIAM.

Following a jury trial, defendant appeals by right from his conviction of possession with intent to deliver less than 50 grams of a controlled substance (heroin), MCL 333.7401(2)(a)(*iv*), second or subsequent offense, MCL 333.7413(2).  For the reasons explained in this opinion, we affirm.

Defendant's conviction arises from his possession with intent to deliver a total of approximately 22 grams of heroin, which was found in defendant's home.  A small packet of heroin was found near defendant's bed while the majority of the heroin was found inside a video cassette recorder (VCR) sitting on a shelf in defendant's bedroom closet.  The heroin was found pursuant to two search warrants executed on June 26 and 27, 2013.  At trial, evidence was presented surrounding the decision to search defendant's home, as well as defendant's interaction with his accomplice, Rollie Smith, Jr., concerning the pair's broader distribution activities and Smith's past purchase of heroin from defendant.  Testimony was also presented by Tracy Champagne, a police informant who purchased heroin, or substances purported to be heroin, from Smith and defendant in a number of controlled purchases using marked bills.  Some of these marked billed were later found in defendant's home.  In an interview with police, defendant eventually admitted that he sold heroin to support his own heroin addiction.  The jury convicted defendant as noted above.[1]  Defendant now appeals as of right.

---

[1] At trial, defendant was found not guilty of delivery of an imitation controlled substance in a related lower court file.

-1-

On appeal, relying on MRE 404(b), defendant first argues that evidence of his prior bad acts should not have been presented to the jury. In particular, defendant asserts the jury should not have been made aware of his numerous previous drug sales to Champagne and Smith, evidence that Champagne and Smith had accompanied defendant on drug buys, and testimony regarding a 2009 occurrence in which packaged heroin was found in a car in which defendant was a passenger.

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). A trial court abuses its discretion when its decision is outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). A preserved evidentiary error will not merit reversal in a criminal case unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative. *Burns*, 494 Mich at 110.

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

To be admissible under 404(b), prior acts evidence must (1) be offered for something other than proving character or propensity, (2) be relevant, and (3) not have a probative value that is substantially outweighed by the potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). The trial court may also, upon request, provide a limiting instruction regarding prior bad acts evidence pursuant to MRE 105. *Id*.

In this case, the prosecution sought to introduce the evidence "to prove knowledge, intent, plan, system of doing an act, or lack of mistake or accident." Knowing possession with intent to deliver is an element of the crime of possession with intent to deliver. *People v Wolfe*, 440 Mich 508, 516-517, 519; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992). By pleading not guilty, defendant placed all elements of the offense "at issue," including the question of his intent to distribute and his knowledge of the substance. See *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998). Further, testimony regarding prior drug sales and prior possession of packaged heroin was logically relevant to show intent to distribute as well as an absence of mistake. MRE 404(b)(1). See *People v McGhee*, 268 Mich App 600, 610-612; 709 NW2d 595 (2005). Given the pattern of repeated drug sales, this evidence also tended to establish that the charged acts were part of characteristic "scheme, plan, or system in doing an act." MRE 404(b)(1). And, although there was a danger that the jury might use this evidence for an improper propensity purpose, the danger did not substantially outweigh the significant probative value of the evidence, *id*. at 614, particularly in light of the following limiting instruction, which the jury is presumed to have followed, *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998):

You have heard evidence that was introduced to show that the defendant committed crimes for which he is not on trial. If you believe this evidence, you must be very careful only to consider it for certain purposes. You may only think about whether this evidence tends to show that the defendant knew what the things found in his possession were; that the defendant acted purposefully, that is not by accident or mistake, or because he misjudged the situation; that defendant used a plan, system or characteristic scheme that he has used before or since.

You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the defendant is a bad person or that he is likely to commit crimes. You must not convict the defendant here because you think he is guilty of other bad conduct.

On the whole, the trial court did not abuse its discretion when it allowed this evidence. Moreover, even assuming some error in the admission of any of this evidence, given the large quantity of heroin found in defendant's home, the marked money used in the controlled buys, and defendant's admission that he distributed drugs to others, defendant has not shown that it is more probable than not that the admission of the challenged other acts evidence was outcome determinative. See *Burns*, 494 Mich at 110.

Defendant next argues that the trial court should have suppressed evidence found pursuant to the search warrants executed on June 26 and 27, 2013. He argues that there was a lack of probable cause to issue the warrants.

"A search warrant may not be issued absent probable cause to justify the search." *People v Martin*, 271 Mich App 280, 298; 721 NW2d 815 (2006). And, probable cause must be supported by oath or affirmation. *Id.* "Probable cause to issue a search warrant exists where there is a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *Id.* (citation omitted).

> [T]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. [*People v Keller*, 479 Mich 467, 475; 739 NW2d 505 (2007) (citation omitted; alterations by *Keller* Court).]

With respect to the June 26, 2013 warrant, the supporting affidavit detailed a number of controlled drug buys made by a confidential informant, i.e., Champagne, over the course of several weeks and defendant's involvement in those activities. Most relevantly, the confidential informant told police that defendant would be bringing 22 grams of heroin to the Caseville area on the afternoon of June 26, 2013. Further, the confidential informant stated that she had been told by defendant that she could go to defendant's house to pick up heroin. Given this

information, the magistrate had a substantial basis for concluding that there was probable cause to believe that there would be heroin at defendant's home, and thus the magistrate did not err by issuing the search warrant. See *People v Whitfield*, 461 Mich 441, 448; 607 NW2d 61 (2000).

Nonetheless, defendant argues that the warrant was based on "stale" information because there had been a substantial delay between any observation of criminal activity and the issuance of the warrant. Contrary to defendant's argument, the triggering events for the June 26, 2013 warrant—the conversations in which defendant stated that he would be bringing 22 grams of heroin to Caseville—occurred that day and the previous day. Moreover, while the details of the controlled purchases related to incidents occurring over several weeks, this did not render the search warrant invalid. Although the passage of time is a consideration in determining a search warrant's validity, a lapse in time is less critical when a history of criminal activity or pattern of violations occurs. *People v Stumpf*, 196 Mich App 218, 226; 492 NW2d 795 (1992). "In the final analysis, the measure of a search warrant's staleness rests not on whether there is recent information to confirm that a crime is being committed, but whether probable cause is sufficiently fresh to presume that the sought items remain on the premises." *People v Gillam*, 93 Mich App 548, 552; 286 NW2d 890 (1979). The affidavit in this case plainly detailed a pattern of criminal activity culminating in information that defendant would be bringing 22 grams of heroin to the area. This information was sufficiently fresh and it provided a substantial basis for the magistrate's decision.

Defendant's other challenge, that the affidavit contained insufficient evidence of the informant's veracity or reliability, is also without merit. Four pages of the affidavit detailed the confidential informant's ongoing interactions with Smith and defendant, including the circumstances surrounding all of the controlled purchases and the success of those purchases. It was reasonable, in light of this information, for the magistrate to find that the confidential informant was credible and that her most recent information concerning the fact that heroin would be found in defendant's home was also reliable. See MCL 780.653; *Stumpf*, 196 Mich App at 223. There was sufficient probable cause to conclude that evidence of criminal conduct would be found in the home.

With respect to the search warrant issued on June 27, the affidavit indicated that the first search had uncovered only .2 grams of heroin when there was reason to believe that defendant had 22 grams of heroin. The affidavit stated that defendant had been arrested on June 26, and, during a conversation on June 27, defendant's mother informed police of additional hiding places defendant might have used to conceal heroin. The affidavit stated that these locations had not been searched, or had not been searched thoroughly, during the first search. Given the information from the confidential information and the hiding places identified by defendant's mother, there was a substantial basis for finding probable cause to issue the second search warrant because there was a fair probability that heroin would be found in defendant's home.

In contrast, defendant appears to argue on appeal that the information was not fresh, and that the police search of the VCR was not authorized by the warrant. Given that the initial information was still less than 48 hours old, that police had already found some evidence in defendant's room, and that defendant's mother told officers that they missed a number of hiding places, the argument that the information was not fresh is without merit. The magistrate could reasonably find that the bulk of the heroin remained in the home. And contrary to defendant's

assertions, the warrant did not limit where in the home the police could search for the heroin, meaning the search of the VCR was proper.[2] In sum, the magistrate did not err in issuing the search warrants and the trial court did not err by refusing to suppress this evidence.

Next, defendant argues that the trial court erred when it refused to allow two defense witnesses, Brandon Fabyan and Anthony Spencer, to more fully testify about incidents in which Fabyan and Spencer were charged with crimes, but for which the charges were dismissed. In particular, following a motion by the prosecution, the trial court excluded the results of a polygraph exam "passed" by Spencer as well as evidence of the fact that, after charges were filed, the cases against these individuals were dismissed. Because Champagne was involved with these cases as an informant, defendant maintains this evidence could have been used to impeach Champagne's credibility and that, in violation of due process, the exclusion of the evidence denied him the opportunity to present a defense.

"Logical relevance is the foundation for admissibility of evidence." *People v Small*, 467 Mich 259, 264; 650 NW2d 328 (2002); MCL 768.29. "All relevant evidence is admissible," unless otherwise excluded by law; and, conversely, "[e]vidence which is not relevant is not admissible." MRE 402. Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Evidence bearing on a witness's credibility is always relevant[.]" *In re Dearmon*, 303 Mich App 684, 696; 847 NW2d 514 (2014). However, under MRE 403, otherwise relevant evidence may be excluded if, among other reasons, it is substantially outweighed by the danger of unfair prejudice or would lead to confusion of the issues.

In this case, when excluding the contested evidence, the court explained that although defendant could admit evidence that Champagne had made false accusations, "the fact that the Prosecutor is not proceeding on their cases . . . that is irrelevant." The court's decision was not

---

[2] Defendant also argues that the second search warrant was overly broad because it encompassed more than the particular hiding places identified by defendant's mother, namely, ceiling tiles, a lamp, and speakers. Defendant fails to support this argument with any legal authority, and we find this contention unavailing. The second affidavit made plain that, while the first search was partially successful, it had not been a thorough search. There were areas that were not searched, or not searched thoroughly, and more generally, the search was complicated because, for reasons unrelated to the search, defendant's room was "in complete disarray." Given the shortcomings of the first search, there was probable cause to believe heroin remained in defendant's room. Cf. *United States v Keszthelyi*, 308 F3d 557, 572-573 (CA 6, 2002) (finding no probable cause for second search when there was no indication that the first search was deficient); *United States v Gerber*, 994 F2d 1556, 1559 (CA 11, 1993) (concluding second search of a car was appropriate when police had failed to look under the hood during their first search). Thus, we see no reason why the magistrate could not issue a second search warrant for defendant's residence. Cf. *United States v Pichay*, 988 F2d 125 (CA 9, 1993) (determining that a second search warrant was properly obtained for the same location when a previous search had been less than thorough).

an abuse of discretion. A prosecutor has wide discretion in pursuing a criminal prosecution, *People v Oxendine*, 201 Mich App 372, 377; 506 NW2d 885, 888 (1993), and there are myriad factors that might influence the prosecutor's decision. In other words, it is not clear that it was the purported falsity of Champagne's accusations that led to the dismissal of charges against Fabyan and Spencer.[3] Consequently, although previous false accusations by Champagne would be relevant to her credibility, the fact that charges against Fabyan and Spencer were not being pursued does not prove that Champagne made false allegations against the two, and thus also against defendant. For this reason, the trial court did not abuse its discretion by concluding that this evidence was irrelevant and thus inadmissible. MRE 401; MRE 402. In addition, even supposing this evidence was somehow relevant, it was properly excluded because the minimal relevance of information regarding dismissal of unrelated cases—when it is not entirely clear why those cases were dismissed—was substantially outweighed by the possibility of confusing the issues at trial. MRE 403. And, in any event, given the substantial evidence of defendant's guilt, any error in the exclusion of this evidence was not outcome determinative. See *Burns*, 494 Mich at 110.

Regarding defendant's due process claim, contrary to defendant's arguments, the exclusion of this evidence also in no way denied defendant an opportunity to present a defense because, consistent with the court's ruling, both Spencer and Fabyan testified that Champagne's allegations against them were false. For example, Spencer was able to testify that, during the time Champagne alleged that he sold her controlled substances, he was actually with his parole officer. Fabyan was also able to present the circumstances surrounding Champagne's similar allegation against him, including the fact that he had not seen her in over a year when she accused him. In short, defendant had the opportunity to explore the veracity of Champagne's previous allegations and thus the trial court's ruling did not deny defendant an opportunity to present a defense. See *McGhee*, 268 Mich App at 637-638.

We also reject defendant's claim that the trial court erred when it refused to allow Spencer to testify that in his case, he was offered, and presumably passed, a polygraph examination. "The bright-line rule that evidence relating to a polygraph examination is inadmissible is well established." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). Defendant maintains that this case is somehow different because the examination was not of him and did not occur in relation to the instant case. This argument is without merit. Defendant sought to admit the test results to support Spencer's veracity and Champagne's lack of veracity. The same reason for polygraph inadmissibility generally, i.e., that the jury would place undue weight on a test without sufficient scientific reliability, see *People v Frechette*, 380 Mich 64, 69; 155 NW2d 830 (1968), applies here.

---

[3] For example, the prosecutor explained on the record that charges against Fabyan were dismissed because, while he was out on bond, he was arrested for another crime carrying a longer potential sentence, and the prosecutor decided to pursue that charge instead.

Defendant next argues that, in violation of *Brady*,[4] the prosecutor improperly withheld information that Rollie Smith, Jr. perjured himself during his testimony in another case involving the delivery of a controlled substance.

Under *Brady*, a criminal defendant has a due process right of access to impeachment and exculpatory evidence possessed by the prosecution if that evidence might lead a jury to entertain a reasonable doubt about a defendant's guilt. *People v Brownridge*, 237 Mich App 210, 214; 602 NW2d 584 (1999). To establish a *Brady* violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that the prosecution suppressed the evidence; and (3) that had the evidence was material, meaning that, had it been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014).

Defendant maintains the prosecutor should have provided information that Smith committed "perjury" in another Huron Circuit Court case. Defendant has failed, however, to establish the factual predicate of his argument, i.e., that Smith committed perjury in the other case. It is somewhat unclear, but it appears that defendant is basing his allegation of perjury on the contention that another witness in that trial testified that Smith told the witness he had lied to the police in order to further the charges against that defendant.[5] Perjury involves "a willfully false statement" under oath. *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004). Conflicting testimony between witnesses does not prove perjury. See *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Therefore, it is not clear that Smith committed perjury in a previous case, and thus defendant has not shown that the prosecutor withheld evidence that Smith committed perjury. Moreover, setting aside the question of "perjury," even assuming that the prosecutor should have disclosed the fact that, in an unrelated case, another witness accused Smith of lying, this evidence was not material within the meaning of *Brady*. That is, assuming this evidence would be admissible, given the other evidence of defendant's guilt, including the large quantity of drugs and buy money found in his room as well as his own admissions, there is not a reasonable probability that the outcome of the proceedings would have been different if the prosecutor had disclosed this evidence potentially impeaching Smith's credibility. See *Chenault*, 495 Mich at 150.

Defendant next argues that he is entitled to resentencing because the trial court engaged in impermissible fact-finding and offense variables (OV) 14, 15, and 19 were improperly scored.

In arguing that the jury must find the facts supporting his sentence beyond a reasonable doubt, defendant relies mainly on *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), and its predecessor, *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000). However, Michigan's indeterminate sentencing scheme and sentencing enhancement statutes are not affected by *Blakely* or *Apprendi*. See *People v Harper*, 479 Mich

---

[4] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

[5] Defendant cites to pages of the transcripts from this previous case, but defendant has not provided them on appeal for our review.

599, 613-615; 739 NW2d 523 (2007); *People v Drohan*, 475 Mich 140, 162 n 13; 715 NW2d 778 (2006). Insofar as defendant references the United States Supreme Court's more recent decision in *Alleyne v United States*, ___ US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), we note that this Court has concluded that judicial fact-finding remains appropriate under Michigan's sentencing scheme even after *Alleyne*. See *People v Herron*, 303 Mich App 392, 405; 845 NW2d 533 (2013), held in abeyance ___Mich ___; 846 NW2d 924 (2014). *Herron* constitutes binding precedent on this Court, MCR 7.215(C)(2), meaning that defendant is not entitled to additional fact-finding by the jury and he is not entitled to resentencing on this basis.[6]

Regarding OVs 14, 15, and 19, on appeal, the trial court's factual determinations are reviewed for clear error and its determinations regarding the scoring of sentencing variables must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

Defendant first challenges the scoring of OV 14, maintaining that it should not have been scored because, the possession conviction did not involve Rollie Smith, Jr., but only involved defendant's possession of the heroin, meaning that the particular offense for which defendant was convicted was not a multiple offender situation.

OV 14 considers "the offender's role" in a criminal transaction, and 10 points should be scored when "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). "[T]he plain meaning of 'multiple offender situation' as used in OV 14 is a situation consisting of more than one person violating the law while part of a group." *People v Jones*, 299 Mich App 284, 286; 829 NW2d 350 (2013), vacated on other grounds 494 Mich 880 (2013). Notably, when scoring OV 14, "the entire criminal transaction should be considered." MCL 777.44(2)(a). Therefore, while generally offense variables are "offense specific," OV 14 is "to be scored differently from most" and "[p]oints must be assessed for conduct extending beyond the sentencing offense." See *People v McGraw*, 484 Mich 120, 126-127; 771 NW2d 655 (2009).

In this case, ample evidence was introduced to show that Smith was intimately involved in defendant's scheme to possess the heroin for later distribution, and had done so with defendant and on his behalf in the past. Considering "the entire criminal transaction," the trial court did not err in scoring OV 14 at 10 points.

Regarding OV 15, defendant argues this variable should not have been scored because defendant's sales to Champagne incident to the controlled buys did not constitute "trafficking" as

---

[6] An appeal of *Herron* to the Michigan Supreme Court has been held in abeyance pending the Michigan Supreme Court's decision in *People v Lockridge*, 304 Mich App 278; 849 NW2d 388 (2014), lv gtd, 496 Mich 852; (2014). However, "[t]he filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." MCR 7.215(C)(2).

defined by MCL 777.45(2)(c) because the sales were for her own personal use and not for further distribution. This claim is without merit. OV 15 assesses points for "aggravated controlled substance offenses." MCL 777.45(1)(h) provides that 5 points are to be scored where "[t]he offense involved the delivery or possession with intent to deliver marihuana or any other controlled substance or a counterfeit controlled substance or possession of controlled substances or counterfeit controlled substances having a value or under such circumstances as to indicate trafficking." "Trafficking" is defined as "the sale or delivery of controlled substances or counterfeit controlled substances on a continuing basis to 1 or more other individuals for further distribution." MCL 777.45(2)(c). The plain language of MCL 777.45(1)(h) applies to possession with intent to distribute convictions, and, in this case, the 22 grams of heroin was of such a quantity and value as to indicate trafficking. Further, the evidence showed that defendant had a history of delivering drugs to Smith, on a continuing basis, for further distribution, and this evidence regarding defendant's past practices provided a reasonable inference that he would distribute the drugs to Smith to resell. The trial court did not err in scoring this offense variable.

Defendant further challenges the scoring of OV 19 by arguing that his lies to police did not amount to an interference with the administration of justice. OV 19 is properly scored at 10 points where "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey (On Remand)*, 303 Mich App 330, 343; 844 NW2d 127 (2013). "It encompasses more than just the actual judicial process and can include [c]onduct that occurs before criminal charges are filed, acts that constitute obstruction of justice, and acts that do not necessarily rise to the level of a chargeable offense. . . ." *Id.* (internal quotation marks and citation and omitted; alteration by *Hershey* Court). Examples include:

> providing a false name to the police, threatening or intimidating a victim or witness, telling a victim or witness not to disclose the defendant's conduct, fleeing from police contrary to an order to freeze, attempting to deceive the police during an investigation, interfering with the efforts of store personnel to prevent a thief from leaving the premises without paying for store property, and committing perjury in a court proceeding. . . . [*Id.* at 344.]

In the instant case, evidence was presented that defendant lied to the police about, for example, whether he had a larger amount of heroin than that found in the first search and whether defendant possessed a large amount of money. These remarks were an attempt to deceive the police during an investigation and they thus fall within the auspices of obstruction of justice as this Court and our Supreme Court have interpreted the language of OV 19. The trial court did not err in scoring this offense variable.

In reviewing the scoring of OV 19, we also reject defendant's claims that OV 19 should be declared void for vagueness and that the rule of lenity requires that OV 19 be interpreted in defendant's favor. "A statute challenged on constitutional grounds is presumed to be constitutional and will be construed as such unless its unconstitutionality is clearly apparent." *People v Vronko*, 228 Mich App 649, 652; 579 NW2d 138 (1998). Further, when making a vagueness determination, judicial constructions of the statute must be considered and a statute "is

not vague if the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises, or their generally accepted meaning." *Id.* at 653. With respect to OV 19, the Michigan Supreme Court has noted that the statute "is plain and unambiguous." *People v Barbee*, 470 Mich 283, 286; 681 NW2d 348 (2004). And, attempting to deceive police during an investigation has been specifically held to constitute interference with the administration of justice. See *Hershey (On Remand)*, 303 Mich App at 344. Consequently, OV 19 is not void for vagueness, particularly as applied to defendant's conduct. See *Vronko*, 228 Mich App at 652-654. Because OV 19 is plain and unambiguous, its construction is also not subject to the rule of lenity. See *People v Johnson*, 302 Mich App 450, 462; 838 NW2d 889 (2013) ("The rule of lenity applies only if the statute is ambiguous or in absence of any firm indication of legislative intent.").

Lastly, defendant maintains that he was denied the effective assistance of counsel at trial. In particular, defendant argues that counsel "abandoned" him when she decided to offer only a limited closing argument on his behalf. Because defendant did not preserve this argument by moving for a new trial or an evidentiary hearing, our consideration of this claim is limited to the existing record. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000).

To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that there is a reasonable probability that, but for the deficiency, the results of the proceeding would have been different. *Id.* at 423-424 (citation omitted). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

Defendant has not shown that counsel's decision to give a concise closing argument was objectively unreasonable. How and whether to give a closing argument is a matter of strategy. *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999); *People v Burns*, 118 Mich App 242, 247; 324 NW2d 589 (1982). Looking to the record before us, we cannot say that counsel's decision, in her words, to not "belabor the point considering the state has spent two long, painstaking days trying to show you with piecemeal, piecemeal, piecemeal of lots of evidence," and to simply tell the jury that counsel knew that the jury would "hold them [the prosecution] to the standard of proof that they need to be held to" was error. This manner of concise argument could reasonably be intended to convey the weakness of the prosecutor's case to the jury by suggesting a long response was unnecessary. Moreover, given the substantial evidence of defendant's guilt—including the large quantity of heroin involved, the buy money found in his home, and his own admissions—defendant has not shown a reasonable probability that the brief nature of counsel's closing argument affected the outcome of the proceedings. Thus, he has not shown that he was denied the effective assistance of counsel.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Kathleen Jansen
/s/ Patrick M. Meter