*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 2, 2020

Plaintiff-Appellee,

v

No. 346740
Wayne Circuit Court
LC No. 18-003155-01-FH

DION BEACH,

Defendant-Appellant.

Before: TUKEL, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and aggravated domestic violence (ADV), MCL 750.81a. Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 108 months to 20 years' imprisonment for the AWIGBH conviction, and to 12 months' time served for the ADV conviction. In the brief on appeal prepared by defendant's appellate counsel, defendant argues that the prosecutor engaged in misconduct by stating that defendant was a "monster" in closing argument. In defendant's standard 4 brief, defendant argues that (1) he was denied his right to due process and a fair trial when the trial judge exhibited bias against defendant and a juror made an ex parte communication to the trial judge; and (2) he was denied the effective assistance of counsel because defense counsel failed to file a motion for a new trial after the trial judge allegedly displayed bias toward defendant, denied defendant's request for change of counsel, and failed to provide a curative instruction after a juror made an ex parte communication to the trial judge. We affirm.

## I. STATEMENT OF FACTS

This case arises out of an assault after defendant's request to the victim for money was denied. Defendant and the victim were in a relationship for approximately three months before the assault. The incident occurred while defendant and the victim were driving in defendant's car; defendant asked the victim to lend him money, which the victim refused. Defendant drove to a nearby set of Automated Teller Machines (ATMs), and grabbed the victim's bookbag from her lap. Defendant inserted the victim's ATM card in the ATM and repeatedly asked her for her

-1-

personal identification number (PIN), but she refused. Defendant drove the victim to a nearby street, exited the vehicle, walked to the passenger side where the victim sat, opened the passenger door, punched the victim multiple times in the face, and threw her out of the car onto the street. The victim ran away and hid for a few minutes before defendant drove the car away. The next morning, defendant dropped off the victim's bookbag to her home. As a result of the assault, the victim suffered rope burns from defendant grabbing her bookbag, as well as facial and neck bruising, soft tissue damage, loss of feeling in the left side of her face, and loss of a tooth.

Defendant was charged with AWIGBH, ADV, and unarmed robbery. During the pretrial proceedings, defendant's initial defense counsel, Arnold Weiner, requested to withdraw as defendant's counsel, citing a breakdown in the attorney-client relationship. The trial judge found that there was no bona fide dispute between defendant and Weiner, and denied Weiner's request. Weiner filed another request to withdraw as defense counsel after learning that defendant had contacted an attorney representing defendant for a different matter to file a motion on defendant's behalf. The trial judge accepted Weiner's motion and appointed Michael Woodyard to serve as defendant's counsel.

During voir dire, the trial judge engaged in a colloquy with a prospective juror regarding sewing. The juror was accepted for the jury panel, and sent the trial judge a note during trial inviting the trial judge to a quilting show. The trial judge informed the parties of the note and neither party had any objection to the juror remaining on the jury; no curative instruction was requested by either party.

The jury found defendant not guilty of unarmed robbery, guilty of AWIGBH, and guilty of ADV. This appeal followed.

## II. DISCUSSION

Defendant alleges in his brief on appeal that he was denied a fair and impartial trial on the basis of prosecutorial misconduct. Defendant further argues in his standard 4 brief that the trial judge's conduct pierced the veil of judicial impartiality contrary to his right to a fair trial and that he was denied the effective assistance of counsel. We disagree with both contentions.

## A. PROSECUTORIAL MISCONDUCT

Defendant claims that the prosecution's reference to him in closing argument as a "well-dressed, six foot four monster" constituted prosecutorial misconduct. Defendant argues that this statement was intentionally inflammatory and aimed to encourage the jury to sympathize with the victim and to disregard an impartial evaluation of the evidence. Defendant alleges this remark denied him a fair and impartial trial. We disagree.

"Issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Even if preserved, a nonconstitutional error does not constitute grounds for reversal unless, after an examination of the entire case, it affirmatively appears more probable than not that the error was outcome-determinative. *People v Brownridge*, 237 Mich App 210, 216; 602 NW2d 584 (1999).

Due process requires the prosecution to prove every element of a charged crime beyond a reasonable doubt. US Const, Am XIV; *People v Eason*, 435 Mich 228, 233; 458 NW2d 17 (1990). When evaluating allegations of prosecutorial misconduct, the test is whether a defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Id.* at 106. "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id.* at 64.

Defendant complains of a single instance of alleged prosecutorial misconduct, which occurred during the prosecutor's closing argument:

> Punched her in the face. She said she was stunned. Punched me in my face. Stunned. Viciously beat her. To this day, September 5, 2018, she does not have feeling in her left cheekbone as a result of this well-dressed, six foot [sic] four monster.

Defense counsel promptly objected to the comment, which the trial judge overruled.

The prosecutor's summary of factual testimony regarding defendant's actions (i.e., punching the victim) and the victim's responses (i.e., her stunned reaction, and the loss of feeling in her left cheekbone) were restatements of the victim's testimony and medical records from the trial. While a prosecutor may not make a factual statement to the jury that is unsupported by the evidence, "he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *Dobek*, 274 Mich App at 66 (citations omitted). Because this portion of the prosecutor's remarks directly relates to the evidence produced at trial and which form the basis of the prosecutor's theory regarding the AWIGBH and ADV charges, the prosecutor's references to defendant's actions were appropriate.

However, the prosecutor's description of defendant as a "well-dressed, six foot four monster" clearly constitutes a characterization of defendant distinct from the evidence presented at trial. While "[t]he prosecutor need not speak in the 'blandest of all possible terms,' " *People v Blevins*, 314 Mich App 339, 355; 886 NW2d 456 (2016), quoting *People v Cowell*, 44 Mich App 623, 628-629; 205 NW2d 600 (1973), a prosecutor "must refrain from denigrating a defendant with intemperate and prejudicial remarks." *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995). Nor may a prosecutor "appeal to the jury to sympathize with the victim." *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008). Referring to defendant as a "monster" may have impermissibly encouraged the jury to vilify defendant. Moreover, the trial court's overruling of the objection, and further castigation of defense counsel when counsel tried to address the "monster" reference in his closing argument, made the matter worse, because it told the jury that it was appropriate to consider defendant's character (i.e., whether or not defendant was "a monster"), rather than limiting its consideration to whether or not the prosecutor had proven the elements of the charged offenses. Additionally, while the prosecutor made reference to the difference in size between the victim and defendant, this was not improper in the context of this case, as the disparity in size between defendant and the victim was relevant to whether he intended to do great bodily harm to her when he assaulted her and punched her in the face.

Prejudicial remarks "during closing argument will be reviewed in context to determine whether they constitute error requiring reversal." *Bahoda*, 448 Mich at 283. Although the prosecutor's statement referring to defendant as a "monster" was improper, defendant was not denied a fair and impartial trial as a result of that single, improper statement. Considering the prosecutor's comments as a whole and in context, the single comment was isolated, brief, and therefore was unlikely to have deflected the jury's attention from the evidence presented. *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001); *Unger*, 278 Mich App at 237. And while we have noted that the trial court compounded the error by criticizing defense counsel when counsel attempted to address the remark in his closing argument, the trial court also offset some of that prejudice with its formal instructions.

The trial court instructed the jury at the beginning and end of the trial that the prosecutor's questions and statements were not evidence, and that jurors were not to be influenced by sympathy or prejudice. At the conclusion of the trial, the judge instructed the jurors "Remember that you have taken an oath to return a true and just verdict based only on the evidence and my instructions on the law. You must not let sympathy or prejudice influence your decision." The judge also instructed:

> My comments, rulings, questions and instructions are also not evidence. It is my duty to see that the trial is conducted according to the law and to tell you the law that applies to this case. However, when I make a comment or give an instruction, I am not trying to influence your verdict or express a personal opinion about the case. If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judges of the facts and should decide this case from the evidence.

"Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). While the remark was improper, for the reasons we have noted, and the trial court's handling of it also was erroneous, the trial court gave extensive instructions which mitigated the error. Given that there was but a single improper comment, we cannot say that "[A]fter an examination of the entire case, it affirmatively appears more probable than not that the error was outcome-determinative." *Brownridge*, 237 Mich App at 216. Consequently, the closing argument did not deny defendant a fair trial.

## B. JUDICIAL BIAS

Defendant contends in his standard 4 brief that he was denied a fair trial because of judicial bias, based on numerous statements and actions by the trial judge throughout the trial. In support, defendant lists several instances in which the trial judge allegedly displayed such bias. We disagree.

To preserve an issue of judicial bias, a party must raise the claim before the trial court. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Defendant did not object to any of the statements made by the trial judge of which he now complains. While defendant's trial counsel did object to some of the trial judge's comments during sentencing, defendant does not

claim that the trial judge was biased at sentencing. Therefore, the issue of judicial bias during trial is not preserved.

Generally, "[t]he question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). Unpreserved issues are reviewed for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

"A 'clear or obvious' error under the second prong is one that is not "subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018). In the instant context, prejudice "requires a showing . . . that the error affected the outcome of the lower court proceedings." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014) (quotation marks and citation omitted).

A defendant "has a right to a neutral and detached judge." *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013). A trial judge is presumed to be unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption. *Jackson*, 292 Mich App at 597-598. "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 170. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. The determination of judicial bias requires a fact-specific inquiry to be evaluated in the context of a given case, and this Court "should not evaluate errors standing alone, but rather consider the cumulative effect of the errors." *Id*. at 171-172. This Court considers a variety of factors in determining whether a trial judge's conduct pierced the veil of judicial impartiality, including:

> the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*.]

As a preliminary matter, we note that defendant's trial counsel did not object to the trial judge's demeanor in any of the instances during jury trial cited by defendant. "[A]n objection by

trial counsel may specifically note the inappropriateness of the judge's demeanor in the courtroom, further aiding the appellate court in understanding the tenor of judicial involvement." *Stevens*, 498 Mich at 176. Woodyard did object to the trial judge's demeanor at sentencing. However, defendant does not request resentencing because of improperly injected personal bias. Nor has this Court found that a trial judge's disapproving remarks at sentencing automatically give rise to a finding of bias. In *People v Antoine*, 194 Mich App 189, 191; 486 NW2d 92 (1992), this Court noted:

> Sentencing is the time for comments against felonious, antisocial behavior recounted and unraveled before the eyes of the sentencer. At that critical stage of the proceeding when penalty is levied, the law vindicated, and the grievance of society and the victim redressed, the language of punishment need not be tepid.

There is no basis for concluding that the trial judge had a personal bias or prejudice against defendant during sentencing, or that the trial judge was biased against defendant because of events or sources of information from outside of the judicial proceeding. See *Cain v Dep't of Corrections*, 451 Mich 470, 495-496; 548 NW2d 210 (1996) (holding that judicial bias must be "both personal and extrajudicial"). Rather, considering the context that this trial judge had imposed the probation sentence that defendant subsequently violated when committing the AWIGBH and ADV at issue, the trial judge's statements were an attempt to impress on defendant the grave nature of the consequences of his actions, and the impact of his actions on the victim. See *Antoine*, 194 Mich App at 191. Furthermore, the trial judge's comments could not possibly have affected the jury's verdict because they were made after the jury returned its verdict.

We will address each of defendant's remaining examples of purported judicial bias in turn. Defendant first highlights the trial judge's statements at the adjourned final conference on June 22, 2018, in response to the prosecutor and Weiner's statements that they were unable to get in contact with a representative from the Wayne County Jail to confirm defendant's alleged alibi. This statement took place before trial, and thus could not have "pierce[d] the veil of judicial impartiality" because the jury was not present. *Stevens*, 498 Mich at 170-171 (noting that a judge's conduct pierces the veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party). Additionally, even if the remark had been made in front of the jury, we would not find it to have pierced the veil. A trial judge's comment that is hostile to, or critical of, a party is generally not sufficient to pierce the veil of judicial impartiality barring a display of "a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Jackson*, 292 Mich App at 598 (citation and quotation marks omitted). The trial judge's stated frustration with the several month delay in proceedings—in conjunction with her knowledge that this defense had not been raised in defendant's violation of probation proceedings, which had occurred three months earlier—does not rise to the level of deep-seated antagonism. *Jackson*, 292 Mich App at 598; *In re Contempt of Henry*, 282 Mich App 656, 680-681; 765 NW2d 44 (2009) (distinguishing judicial frustration from actual bias or prejudice).

Defendant next suggests that the trial judge's admonishment of defendant for being tardy on the first day of trial, and her rejection of Woodyard's attempted explanation for defendant's tardiness, evidence bias against defendant. Defendant also argues that the trial judge's decision to

revoke his bond was "vindictive" and that she "disregarded" the explanation offered by Woodyard. Neither of these statements, nor the decision to cancel bond, could pierce the veil of impartiality because both statements were made outside the presence of the jury. See *Stevens*, 498 Mich at 170. Additionally, the trial judge's decision to remand defendant was made on the basis of defendant's nearly two-hour tardiness for the start of trial, coupled with defendant's long-standing knowledge, both from this case and an earlier case, of the trial judge's fixed regular start time. The trial judge's decision involved the court fulfilling its duty to control the courtroom, and while defendant may infer irritation or frustration in the trial judge's statements, there is no evidence of deep-seated antagonism in the trial judge's decision. See MCL 768.29; *Jackson*, 292 Mich App at 598.

Nor is there merit in defendant's argument that the trial judge's statement to Woodyard to "[s]top challenging my authority in the courtroom" evidenced bias and improperly influenced the jury. Defendant is correct in his contention that this Court should consider the words, tone, and demeanor the trial judge displayed in front of the jury with this comment. *Stevens*, 498 Mich at 176. "[I]n certain circumstances, the very nature of the words used by the judge can exhibit hostility, bias, or incredulity." *Id.* "Because jurors look to the judge for guidance and instruction, they are very prone to follow the slightest indication of bias or prejudice upon the part of the trial judge." *Id*. at 174 (citation and quotation marks omitted).

Yet an evaluation of the nature of the judicial statement in context shows that it was made in response to Woodyard's extended challenge to the trial judge's ruling on a previous objection. Woodyard objected to the prosecutor's statement calling defendant a "monster" during closing argument, and the trial judge overruled Woodyard's objection. Despite this ruling, Woodyard began his closing statement with a rebuke of the prosecutor's closing statement, including an assertion that "that sort of inflammatory language . . . really doesn't have any place in this procedure." Consequently, the statement highlighted by defendant directly addressed Woodyard's effective disregard of the trial judge's earlier ruling, and was not the "belittling of counsel" or "biased commentary in front of the jury" that constitutes judicial misconduct. *Stevens*, 498 Mich at 173-174.

Evaluation of the other factors highlighted by *Stevens* supports the conclusion that this was not judicial bias. *Stevens*, 498 Mich at 172 (listing factors to consider when addressing the issue of judicial bias). This was a single, isolated statement in the context of the trial, and the only instance of alleged judicial bias highlighted by defendant that occurred in the presence of the jury. Furthermore, although the trial judge did not give the jury a specific instruction concerning the incident, the trial judge did inform the jury that "You must take the law as I give you—as I give it to you. Nothing I say is meant to reflect my own opinions about the facts of the case. This is your job and no one else's." The trial judge also instructed the jury that "[m]y rulings for or against one side or the other are not meant to reflect my opinions about the facts of the case." It is presumed that the jurors followed these instructions. *Abraham*, 256 Mich App at 279. Thus, this statement does not rise to the level of demonstrating partiality against a party as required to conclude that the trial judge pierced the veil of judicial impartiality. See *Stevens*, 498 Mich at 170.

Defendant additionally highlights the trial judge's refusal to amend the verdict form to include the words "or by strangulation" in the language for the AWIGBH charge while the jury instructions were being given. This, too, does not demonstrate bias nor pierce the veil of

impartiality. "The mere fact that a judge ruled against a litigant . . . is not sufficient to require disqualification or reassignment." *In re Contempt of Henry*, 282 Mich App at 680. The trial judge had a legitimate reason for its comment and ruling: Woodyard previously approved the jury instructions and the verdict form before the trial judge gave the jury instructions, and the prosecutor's theory of the case did not hinge on an allegation of strangulation. Thus, the trial judge's denial of Woodyard's request to amend the jury instructions did not establish judicial bias.

The final statement or decision highlighted by defendant was the trial judge's failure to instruct the jury of the impropriety of the note received from juror 14. Defendant implies that the trial judge's omission evidenced judicial bias. However, considering the innocuous nature of the invitation and its lack of relation to defendant and the criminal proceeding, the note did not necessitate a specific curative instruction or removal of juror 14. Neither Woodyard nor the prosecutor requested an instruction or the removal of juror 14. Furthermore, trial courts have "wide discretion and power in matters of trial conduct." *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006) (quotation marks and citation omitted). In light of the heavy presumption of judicial impartiality, none of the instances highlighted by defendant, alone or taken together, were sufficient to establish judicial bias.

Additionally, we note that defendant urges this Court to contrast the circumstances at issue here to *United States v August*, 745 F2d 400 (CA 6, 1984). In *August*, the limiting instruction related to the trial court's reference to a conspiracy, as it affected the admissibility of evidence, see FRE 801(d)(2)(E); the case had nothing to do with judicial impartiality, and in any event found no reversible error. *August* is simply inapposite to the present case.

Therefore, defendant has failed to overcome the presumption that the trial judge was impartial, and has not presented evidence to establish that the trial judge's conduct pierced the veil of judicial impartiality contrary to his right to a fair trial. *Jackson*, 292 Mich App at 597; *Stevens*, 498 Mich at 170.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues in his standard 4 brief that he was denied the effective assistance of counsel. In support, defendant contends that Woodyard was ineffective for what he characterizes as (1) failing to move for a new trial when he was appointed three weeks before the scheduled trial date;[1] (2) failing to object when a juror invited the trial judge to a quilting show; and (3) failing to file a motion for new trial on the basis of the prosecutor's improper comments and the trial court's alleged display of bias against defendant. We disagree.

To properly preserve a claim of ineffective assistance of counsel, a defendant must move for either a new trial or a *Ginther*[2] hearing in the trial court; failure to make any such motion "ordinarily precludes review of the issue unless the appellate record contains sufficient detail to

---

[1] Defendant acknowledges that no trial had yet taken place. His argument is essentially that counsel should have moved for a continuance to allow further time for preparation.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

support the defendant's claim." *People v Sabin (On second Remand)*, 242 Mich App 658-659, 661; 620 NW2d 22 (2000). Defendant failed to move for a new trial or a *Ginther* hearing at the trial court level. Thus, the issue is unpreserved.

Regardless of whether a claim of ineffective assistance is properly preserved, if the trial court did not hold a *Ginther* hearing, "our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). "Whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). Additionally, "[a] trial court's factual findings are reviewed for clear error." *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003).

A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel. . ." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

The "reasonable probability" standard can be satisfied by less than a preponderance of the evidence. *Trakhtenberg*, 493 Mich at 56.

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *Unger*, 278 Mich app at 242. Thus, there is a "strong presumption that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy[.]" *Id*. at 242-243.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. [*Strickland*, 466 US at 689 (citation omitted).]

"Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). Accordingly, the reviewing court must consider the range of potential reasons that counsel might have had for acting as he or she did. *Id.*

## 1. INADEQUATE PREPARATION TIME

Defendant first claims that Woodyard was ineffective for failing to move for a new trial when he was appointed only three weeks before the scheduled trial date. We construe this as an argument that Woodyard should have moved for a continuance for more preparation time. See n 1, *supra*. But there is no indication in the record that additional preparation time was necessary, and the case was not complicated. Defendant has not provided any evidence in support of his contention that Woodyard had inadequate time to prepare. Nor does the record support the argument that trial counsel was unprepared. Woodyard questioned the victim regarding alleged inconsistencies in her statements to medical providers and police officers, challenged the testifying police officer regarding the allegedly belated and incomplete collection of statements from involved parties after the assault, and focused the jury's attention on how defendant returned the bookbag. Additionally, Woodyard was aware of the trial date when he accepted the appointment as defense counsel, and communicated with defendant several times in person and by telephone preceding the pretrial hearing and the trial. Defendant testified he was satisfied with Woodyard's advice and counsel when rejecting the prosecutor's plea offer. Therefore, defendant has failed to demonstrate ineffective assistance.

Defendant additionally argues that he was denied the opportunity to obtain counsel of his choice after the trial judge denied Weiner's initial motion to withdraw as retained counsel. This Court reviews a trial court's decision affecting a defendant's right to retain counsel of choice and whether to adjourn a trial for an abuse of discretion. *People v Akins*, 259 Mich App 545, 556; 675 NW2d 863 (2003). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

Defendant contends that the trial judge's decision to deny Weiner's initial request to withdraw was improper because it was solely on the basis of the trial judge's desire to speed up the trial and personal belief that defendant wanted to delay the trial. While the constitutional right to counsel encompasses defendant's right to choose his own retained counsel, this right is not absolute. US Const, Am VI; US Const, Am XIV, § 1; 1963 Const, art I, §§ 13 and 20; *People v Aceval*, 282 Mich App 379, 386-387; 764 NW2d 285 (2009). A trial court is tasked with balancing a defendant's right to counsel of choice against "the public's interest in the prompt and efficient administration of justice[.]" *Aceval*, 282 Mich App at 386-387. Additionally:

> When reviewing a trial court's decision to deny a defense attorney's motion to withdraw and a defendant's motion for a continuance to obtain another attorney, we consider the following factors: (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant

was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. [*People v Echavarria*, 233 Mich App 356, 369; 592 NW2d 737 (1999).]

The trial judge denied Weiner's initial motion to withdraw because she found there was no bona fide dispute between defendant and Weiner and because defendant expressed only general dissatisfaction with Weiner's performance and his alleged lack of communication with defendant. As stated previously, the trial judge's belief that defendant was attempting to delay trial was reasonable and is supported in the record: because the trial judge oversaw defendant's violation of probation proceedings regarding the same conduct at issue in this case three months previously, she fairly questioned the veracity of defendant's late-stage, complete alibi defense and defendant's motives for newly asserting the defense. Therefore, the trial judge did not abuse her discretion in denying Weiner's initial motion to withdraw. After defendant contacted a different attorney—the attorney for his separate probation violation—to file a motion for release, and neglected to inform Weiner, the trial judge found that there was a bona fide dispute and complete breakdown in the relationship. Because the trial judge did not abuse her discretion in denying Weiner's initial motion to withdraw, and because the trial court granted Weiner's second motion, defendant's right to counsel was not violated.

## 2. JUROR NOTE TO THE TRIAL JUDGE

Defendant next claims that Woodyard was ineffective for failing to object when a juror sent a written note to the trial judge inviting her to a quilting show. Defendant acknowledges that "[i]n isolation the incident may have been innocuous," but argues that the trial judge expressed her "personal bias" against defendant and thus, the juror may have been "compromised by a desire to please or side with the judge and develop a personal relationship." Woodyard was ineffective, defendant contends, for failing to request that the juror be dismissed to avoid "even the appearance of an impropriety," and thus denied defendant his right to a fair trial.

This argument rests on the contention that Woodyard was ineffective for failing to request the juror's removal at the time that the trial judge informed the parties of the note. The trial judge received the note on the first day of trial, after the jury was sworn in, as the jury was entering the courtroom to receive instructions and begin opening statements. Additionally, defendant's allegations of judicial bias reference only two events that took place before the note was passed to the trial judge: (1) the trial judge's decision to deny Weiner's initial motion to withdraw as defense counsel, and (2) the trial judge's statements about her decision to remand defendant to the Wayne County Jail between the two days of trial. However, both of these instances occurred outside the presence of the jury: they occurred before the trial began and before the prospective jurors entered the courtroom on the first day of trial, respectively. The juror could not possibly have been affected by any appearance of judicial bias at that time because the juror was not present for and thus was unaware of the events at issue. Thus, this Court will not "use the benefit of hindsight when assessing counsel's competence" to find that Woodyard was ineffective for failing to request removal of the juror *when the note was received*. *Unger*, 278 Mich App at 242-243.

Moreover, defendant only speculates as to the juror's alleged partiality. Although a criminal defendant has a constitutional right to be tried by an impartial jury, US Const, Am VI;

jurors are presumed to be impartial, qualified, and competent. *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008). "The burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Id.* at 550. Defendant has offered no evidence that the juror was partial beyond a bare reference to the possibility that the juror would be biased in her decision-making out of a desire to befriend the trial judge. But there is no reason to think, even if the juror had been trying to befriend the trial judge, that this would have led the juror to be biased against defendant rather than in his favor. Moreover, there is no record evidence that the jury verdict was the product of any juror partiality. Defendant thus has not meaningfully demonstrated that he was prejudiced by the juror's presence on his jury as required for a new trial. See *Id.* at 552. Furthermore, although the trial judge did not give the jury a specific instruction concerning the incident,[3] the trial judge did inform the jury that its statements of law and rulings did not reflect her opinions about the facts of the case, and instructed that "[y]ou must not let sympathy or prejudice influence your decision." It is presumed that the juror followed these instructions. *Abraham*, 256 Mich App at 279. Considering that a request for removal of the juror would likely have been meritless, Woodyard was not ineffective for failing to advocate this position. See *Goodin*, 257 Mich App at 433.

Beyond requesting removal of the juror, defendant alleges that Woodyard was ineffective for failing to object to the trial judge's handling of the note in other ways: (a) not asking how the juror passed the note, (b) neglecting to object to the trial judge not putting the response to the juror on the record, and (c) failing to request that an admonishment be given to the jury. Defendant does not provide justification for why Woodyard's actions and omissions allegedly fell below an objective standard of reasonableness under prevailing professional norms. Trial counsel can, as a matter of trial strategy, reasonably decline to object to procedures. See *Unger*, 278 Mich App at 242.

Furthermore, this Court must affirmatively entertain the range of possible reasons that defense counsel may have had for proceeding as he did. *Vaughn*, 491 Mich at 670. Woodyard may not have requested an admonishment for the jury because it could affect the jury's perception of defendant, or because he viewed it as unnecessary considering the note was entirely unrelated to the case. There are several possible legitimate strategic reasons for Woodyard's omissions, and thus defendant has failed to overcome the presumption that Woodyard's decision was a matter of trial strategy. We afford "wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case." *Heft*, 299 Mich App at 83. In addition, considering that no further notes were passed to the trial judge and the note was entirely unrelated to the case, it is unreasonable to believe that Woodyard's request for an admonishment or request for any response to be on the record would have changed the outcome of the proceedings. Thus, even assuming that Woodyard should have acted in the ways identified by defendant in response to the juror's note, defendant has not demonstrated that his conviction was affected by counsel's failure to do so. *Sabin*, 242 Mich App at 659.

---

[3] If the trial judge responded to the juror's note in the presence of the jury no record was made of the trial judge's response. The trial judge did, however, address the juror note with the parties and neither party had any objection to the juror remaining a juror in this case.

### 3. PROSECUTOR'S COMMENTS AND JUDICIAL BIAS

Defendant's final contention regarding Woodyard's alleged ineffective assistance centers on his failure to file a motion for a new trial on the basis of the trial judge's bias against defendant. As discussed, defendant has not demonstrated that the trial judge was biased against defendant or that the trial judge pierced the veil of judicial impartiality such that he was denied a fair trial. Given our disposition of this issue, we likewise reject defendant's contention that defendant was denied the effective assistance of counsel through Woodyard's failure to object to judicial bias because any such objections would have been futile.

### III. CONCLUSION

Defendant was not denied a fair and impartial trial on the basis of prosecutorial misconduct. Defendant has failed to overcome the presumption that the trial judge was impartial, and has not presented evidence to establish that the trial judge's conduct pierced the veil of judicial impartiality. Defendant was not denied the effective assistance of counsel.

Affirmed.

/s/ Jonathan Tukel
/s/ Jane E. Markey
/s/ Brock A. Swartzle