*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 18, 2020

Plaintiff-Appellee,

v

No.  344591
Kent Circuit Court
LC No.  17-010339-FH

WILLIAM ALONZO BURRIS,

Defendant-Appellant.

Before:  MARKEY, P.J., and GLEICHER and M. J. KELLY, JJ.

MARKEY, P.J. (*dissenting*).

Defendant appeals by right his jury-trial convictions of one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with person under 13 years of age), and accosting a child for immoral purposes, MCL 750.145a.[1]  Defendant, a fourth-offense habitual offender, MCL 769.12, was sentenced to 25 to 75 years' imprisonment for the CSC-II conviction and 8 to 15 years' imprisonment for the accosting conviction.  Because I conclude that the proper resolution of this appeal is to affirm defendant's convictions, I respectfully dissent.

## I.  FACTS

Defendant's daughter, AM, was at a home belonging to defendant's girlfriend, Jacora Seymore, on June 17, 2017.  AM was nine years old at the time.  Also in the home were LS, Seymore's eight-year-old daughter, AB, defendant and Seymore's five-year-old daughter, and two other children aged three and two.  Seymore left defendant alone to watch the children.  According to AM, defendant showed her, LS, and AB adult pornography on his cell phone and asked the girls if they would like to do what was depicted in the photographs.  AM testified that defendant touched her breasts and "private part" with his hands over her clothing.

---

[1] Defendant was found not guilty of an additional count of CSC-II, and a second count of accosting a minor for improper purposes was dismissed on entry of a *nolle prosequi*.

AM testified that she first reported defendant's acts to Seymore while defendant was present. Seymore denied that AM discussed any abuse with her. According to AM, Seymore and defendant were not receptive to the accusation and told her not to tell anyone about what had happened. AM next reported the incident to her mother, Shaunda Carter-Matthews. In this conversation, AM also disclosed that defendant had been molesting her for the past two years. Carter-Matthews called the police. Detective Jennifer Wordelman referred AM to the Children's Advocacy Center, where a forensic interviewer, Amy Minton, interviewed her, as well as LS and AB. Detective Wordelman also referred AM for an examination with a sexual assault nurse examiner, Stephanie Solis.

Defendant was initially charged with one count of CSC-II for assaulting AM and two counts of accosting a minor for immoral purposes, one with regard to AM and one with respect to LS. At the preliminary examination, the prosecutor informed the court that she would not be pursuing the count of accosting LS, but would be seeking to add a second count of CSC-II against defendant for assaulting AM. Defendant was bound over for trial, and a jury found him guilty of one count of CSC-II and the sole count of accosting a minor for immoral purposes.

## II. ANALYSIS

## A. CHOICE OF COUNSEL

Defendant argues that he was denied the right to counsel of choice when an attorney, whom he retained shortly before trial was set to begin, was dismissed by the circuit court and replaced with an appointed attorney, who had previously represented defendant in the matter. The majority agrees and reverses defendant's convictions.

A court's decision affecting a defendant's right to counsel of his or her choice is reviewed for an abuse of discretion. *People v Akins*, 259 Mich App 545, 556-557; 675 NW2d 863 (2003). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018) (quotation marks and citation omitted). If a court improperly removes defense counsel, the defendant need not show prejudice to be entitled to relief. *People v Johnson*, 215 Mich App 658, 667-668; 547 NW2d 65 (1996). "[W]hether substitute counsel performed competently is irrelevant." *Id*. at 668-669. "[H]armless-error analysis does not apply where a trial court violates a defendant's Sixth Amendment right to counsel by improperly removing appointed or retained trial counsel . . . ." *Id*. at 669.

The right to counsel, including the right to counsel of one's choosing, is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, §§ 13 and 20; *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). But the right is not absolute; rather, it is subject to "a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice . . . ." *Id*. at 386-387 (quotation marks, alteration, and citation omitted). A court has "wide latitude" to "balanc[e] the right to counsel of choice against the needs of fairness and against the demands of its calendar[.]" *Id*. at 387 (quotation marks and citations omitted). In *Morris v Slappy*, 461 US 1, 11-12; 103 S Ct 1610; 75 L Ed 2d 610 (1983), the United States Supreme Court observed:

Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel. [Quotation marks and citations omitted.]

Defendant was initially provided appointed counsel, Edward J. Lis, who represented defendant at the preliminary examination held on November 14, 2017. At the preliminary examination, Lis noted that defendant was contemplating retaining attorney Edwin G. Johnson, III. And defendant voiced some dissatisfaction with Lis's representation up to that point. The district court observed, however, that Johnson had not filed a substitution of counsel or an appearance. The district court conducted the preliminary examination and bound defendant over for trial in the circuit court.

A notice of jury trial was mailed out by the circuit court on December 28, 2017, setting the case for trial on February 12, 2018. A substitution of counsel was executed by Johnson and filed in the circuit court on January 22, 2018. On that same date, the circuit court signed and approved the substitution. On February 9, 2018, Johnson filed his appearance in the circuit court on behalf of defendant, but again, the substitution of counsel had become effective approximately two weeks earlier on January 22, 2018. On February 12, 2018, the circuit court mailed out a notice that the trial had been adjourned until February 26, 2018. The notice was sent to Johnson. The reason for the adjournment is not reflected in the record. On February 16, 2018, Johnson filed a motion to adjourn the trial. Johnson sought a 90-day adjournment, while indicating that he needed at least 60 days to properly prepare for trial, research matters, and obtain discovery in relation to an associated parental termination proceeding involving defendant that was dismissed. On February 21, 2018, Johnson mailed a letter to the circuit court with information regarding Johnson's scheduled matters on February 26, 27, and 28, 2018, in other cases in which Johnson was counsel of record. The letter suggested that the circuit court had asked Johnson to supply the information.

On February 23, 2018, a hearing was conducted on the motion to adjourn. As reflected in the majority's extensive quotation from the transcript, the hearing was contentious. Johnson explained that he was unable to proceed with trial the following Monday. Johnson claimed that he had been unable to investigate the matter, prepare a witness list, or, in his words, "do anything in this case." Johnson asserted that he was unaware that a trial date had been set when he first appeared in the case. He had examined the register of actions in December 2017, apparently the day before notice of the February 12, 2018 trial date was sent to the parties. The circuit court asked Johnson if he was indeed claiming that he had "done nothing on this case," and Johnson responded in the affirmative. Johnson explained that he ran a "one-man office." The circuit court noted that it had contacted another court regarding Johnson's representation about having a two-week trial in another case, and the court was advised that the trial was not expected to take that long. Although the prosecution did not object to an adjournment, it believed 90 days was excessive. Eventually, the circuit court stated that it would adjourn the trial for 30 days and that

-3-

if Johnson was not prepared at that point, he would be removed from the case. Johnson retorted that the court "might as well do that now" because he could not possibly be ready for trial within 30 days. The circuit court so agreed, removed Johnson from the case and reappointed Lis to serve as defendant's attorney.

After the hearing and ruling, but still on February 23, 2018, the circuit court issued a notice rescheduling the trial for April 23, 2018—60 days later, which is when the trial commenced with Lis as defense counsel. On April 16, 2018, Johnson moved for reconsideration of the circuit court's decision to dismiss him from representing defendant. The motion explained that after receiving notice of the new trial date, Johnson tried to substitute back into the case on March 2, 2018, but was informed by Lis that the circuit court would not sign an order of substitution. Johnson argued that the circuit court's refusal to allow an adjournment was arbitrary and that the court had violated defendant's right to counsel of his choice. The circuit court issued an opinion and order denying the motion. The court explained that in reference to the attempted substitution on March 2, 2018, it was "unclear from the motion which order Mr. Johnson [was] referring to . . . ." The circuit court denied the motion because it was filed more than 21 days after the challenged removal and substitution order was entered and because it rehashed issues raised previously.

On the first day of trial, defendant addressed the court and brought up the question of proceeding to trial with Lis instead of Johnson. The circuit court stated the following:

> Number one, he'd already gotten this adjourned a couple of times, and he indicated he wouldn't be able to try it for several months down the road. Also, quite frankly, your attorney lied to me. He lied about where his commitments were, where he was going to be, what he was involved in. My staff had done some follow up to contact the courts to see if he was actually going to be tied up for the times that he indicated. He was not. I'm not going to allow an attorney to just continually adjourn trial and also be dishonest with me. That is why I removed him. He, in fact, quite frankly—he filed a motion for reconsideration, and he didn't even follow the court rules. It had to be filed within a certain period of time—I think 21 days. He didn't even follow that. So we're proceeding with Mr. Lis today.

Defendant argues that he was denied the right to retained counsel of his choice by the circuit court's actions. I first note that although the circuit court declined to grant a 90-day adjournment, it was ultimately Johnson, not the court, who ended Johnson's involvement in the case when he declared that he would not be able to try the case in 30 days. Under those circumstances, Johnson asked to be removed, and the circuit court obliged.

Johnson substituted in for Lis on January 22, 2018, as approved by the circuit court. With the February 12, 2018 trial date adjourned, the case was set for trial on February 26, 2018, which would have given Johnson a little more than a month to prepare for trial. Although under those circumstances, the trial court could have allowed a further adjournment, I agree with the circuit court that it was troubling that Johnson had essentially done nothing to at least begin preparation for trial during his first 30 days representing defendant. That said, the circuit court was willing to order a second adjournment and give Johnson 30 more days to prepare for trial. Had a 30-day adjournment actually occurred, which would have resulted in a trial date around March 23, 2018, Johnson would have had two months total to prepare for trial, but this was unsatisfactory to

-4-

Johnson. I cannot conclude that a two-month period to prepare for the trial was unreasonably short or that the court's decision-making constituted an unreasoning and arbitrary insistence upon expeditiousness. Thus, the circuit court did not abuse its discretion by limiting a second adjournment to 30 days from the scheduled trial on February 26, 2018.

Furthermore, the circuit court believed that Johnson had been deceptive regarding the length of a trial that Johnson indicated that he had in Kalamazoo. On the first day of trial in the instant case, the court appeared to indicate that there had been multiple lies by Johnson regarding his schedule. The circuit court stated that it was not going to continue granting adjournments when an attorney was being "dishonest." I find nothing inappropriate about the court's checking into Johnson's claims regarding his scheduled cases and trials to verify the reasons for the 90-day adjournment request. I find it noteworthy that defendant does not counter in any form or fashion the court's accusations.

On February 23, 2018, after the circuit court had rejected Johnson's request for a 90-day adjournment, the court substituted Lis back into the case. On that date, the court scheduled a trial for April 23, 2018. Johnson had indicated that he needed at least 60 more days to prepare, and a trial date of April 23, 2018, would have given Johnson those 60 days, which is why Johnson later attempted to be substituted back into the case as defendant's attorney and filed the motion for reconsideration, both without success. Only speculation can lead one to conclude that the circuit court abused its discretion. The circumstances might suggest that the earliest that the court could have scheduled the trial, upon the adjournment, was April 23, 2018, and not around March 23, 2018. But although Johnson claimed that he needed at least 60 days to prepare for trial, his request was for a 90-day adjournment, not 60 days. Moreover, the April 23rd trial date was very likely set by a court scheduling clerk without any involvement of the circuit court judge. He or she would simply set the next available date that would allow sufficient time for the trial beyond the 30 day adjournment. And, assuming there were no available March trial dates, we do not even know whether the circuit court was aware of such when it informed Johnson that only a 30-day adjournment would be allowed.

Eventually, the circuit court eventually learned that Johnson claimed he was willing and able to represent defendant at the trial scheduled for April 23, 2018. The court refused to allow him to again seek to take over representation. But, again, I cannot find that the circuit court abused its discretion. The court determined that Johnson had lied to the court and, again, defendant makes no claim on appeal to the contrary. I can fully understand why the court would not give Johnson a 60-day adjournment in light of the claimed deception. An accused's right to counsel of his or her choice must be balanced against the prompt, fair, and efficient administration of justice, and attempts to deceive a court are the antithesis of promptness, fairness, and efficiency. In sum, I conclude that there was no abuse of discretion.

I also note that a trial court may remove retained counsel on a showing of gross incompetence, physical incapacity, or contumacious conduct. *People v Bailey*, __ Mich App __, __; __ NW2d __ (2019); slip op at 7-9. As indicated, Johnson represented that he had done nothing on the case in the month or so since he had been retained. Johnson also stated that he had not checked the register of actions, at least recently, to determine if a trial was set. And, again, the trial court believed that Johnson had lied to the court with respect to the demands of his calendar. As viewed and characterized by the trial court, Johnson's lack of diligence and candor could be

described as gross negligence and contumacious conduct, providing an additional reason for his removal from the case.

## B. OTHER-ACTS EVIDENCE

The majority addresses defendant's argument regarding other-acts evidence and directs the circuit court to reconsider its decision to admit the evidence if the prosecution again seeks to have it admitted, whether under MRE 404(b) or MCL 768.27a. The majority provides the circuit court with the framework to use in reassessing the admissibility of the other-acts evidence, coming excruciatingly close to ruling that the evidence was inadmissible and leaving the court with little to no room to rule differently. I disagree with the majority's position concerning the other-acts evidence.

Defendant argues that the circuit court abused its discretion by admitting other-acts evidence (1) that he had sexual intercourse with Carter-Matthews on a regular basis when she was 15 years old, which resulted in her pregnancy with AM, and (2) that defendant had an encounter in a hotel room involving a 15-year-old girl, NE, which included defendant touching NE's breasts. The circuit court admitted the other-acts evidence to prove "intent" under MRE 404(b), absent any discussion of MCL 768.27a, even though the statute and the rule of evidence were both raised by the parties. As indicated below, the circuit court should have analyzed the issue under MCL 768.27a. I conclude that the other-acts evidence was admissible under MCL 768.27a, but I also find that the evidence was admissible under MRE 404(b). Because the circuit court focused solely on MRE 404(b), I shall engage in and begin with an analysis of MRE 404(b).

We review for an abuse of discretion a trial court's decision to admit evidence. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). But whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo. *Id.* When a trial court admits evidence that is inadmissible as a matter of law, the court necessarily abuses its discretion. *Id.* MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Other-acts evidence is admissible if it is offered for a proper purpose under MRE 404(b), if it is relevant under MRE 401 and 402 as enforced through MRE 104(b), and if the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under MRE 403. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993). With respect to the *VanderVliet* test, the *Denson* Court stated:

> Under the first prong of the *VanderVliet* test, the question is whether the prosecution has articulated a proper noncharacter purpose for admission of the other-acts evidence. The prosecution bears the burden of establishing that purpose.

-6-

MRE 404(b) prohibits the admission of other-acts evidence when the prosecution's only theory of relevance is that the other act demonstrates the defendant's inclination for wrongdoing in general and thus indicates that the defendant committed the conduct in question. On the other hand, such other-acts evidence may be admissible whenever it is also relevant to a noncharacter purpose, such as one of the purposes specifically enumerated in MRE 404(b)(1). [*Denson*, 500 Mich at 398-399 (citations omitted). ]

Again, in this case, the circuit court admitted the other-acts evidence for purposes of the prosecution's effort to prove "intent." The crux of the trial concerned whether defendant actually touched AM. But the prosecution was also required to prove beyond a reasonable doubt that defendant *intentionally* touched AM's genital area and/or breasts, or the clothing covering those areas, and that this intentional touching was done *for sexual purposes* or could reasonably be construed as having been done for sexual purposes. MCL 750.520c(1)(a); MCL 750.520a(q) (defining sexual contact); M Crim JI 20.2(2) and (3);[2] *People v Nyx*, 479 Mich 112, 135; 734 NW2d 548 (2007). The other-acts evidence was offered for a proper, noncharacter purpose, i.e., showing that defendant intentionally touched AM's genital and breast areas and that the touching was for a sexual purpose.

The second prong of the *VanderVliet* test—logical relevance—implicates MRE 401 and 402 and is the "touchstone" relative to the admissibility of other-acts evidence. *Denson*, 500 Mich at 400-401. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Id*. at 401. "Materiality" requires other-acts evidence to be related to a fact that is of consequence in the case, meaning that the fact sought to be proven must truly be at issue. *Id*. In regard to materiality, the *Denson* Court noted that the prosecution has the burden to prove all the elements of a charged crime beyond a reasonable doubt. *Id*. In *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998), our Supreme Court observed:

> It is well established in Michigan that all elements of a criminal offense are "in issue" when a defendant enters a plea of not guilty. Because the prosecution must carry the burden of proving every element beyond a reasonable doubt, regardless of whether the defendant specifically disputes or offers to stipulate any of the elements, the elements of the offense are always "in issue" and, thus, material. [Citation omitted.]

In this case, I conclude that the other-acts evidence that defendant engaged in sexual touching, contact, and penetration with female minors was material to proving the elements of CSC-II, as elaborated on earlier.[3] The majority is simply wrong by suggesting that "intent" was not material because the defense was that no touching ever occurred and not that there was inadvertent or accidental touching. The majority's analysis ignores the caselaw which provides that all of the

---

[2] The jury was instructed consistent with the model instructions.

[3] To be clear, the sexual penetration only pertained to the acts against Carter-Matthews.

-7-

elements of a crime are material and must be proven regardless of whether the defendant specifically disputes or offers to stipulate to any of the elements.

Concerning the "probative value" component of the second prong of *VanderVliet*, the *Denson* Court explained:

> Evidence is probative if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Generally, the threshold is minimal: any tendency is sufficient probative force. In the context of prior acts evidence, however, MRE 404(b) stands as a sentinel at the gate: the proffered evidence truly must be probative of something other than the defendant's propensity to commit the crime. Thus, although the prosecution might claim a permissible purpose for the evidence under MRE 404(b), the prosecution must also explain how the evidence is relevant to that purpose without relying on a propensity inference. Ultimately, the court must determine whether the prosecution has established some intermediate inference, other than the improper inference of character, which in turn is probative of the ultimate issues in the case. If not, the evidence is inadmissible. [*Denson*, 500 Mich at 401-402 (citations omitted).]

I conclude that the other-acts evidence that defendant engaged in sexual touching, contact, and intercourse with female minors made it more probable than without the evidence that defendant intentionally touched AM's genital and breast areas and did so for a sexual purpose.[4] Accordingly, the other-acts evidence had probative value.

The third *VanderVliet* prong of the test provides that the probative value of the other-acts evidence cannot be substantially outweighed by the danger of unfair prejudice. *Denson*, 500 Mich at 398. The third prong simply requires the trial court to employ the balancing process set forth in MRE 403. *VanderVliet*, 444 Mich at 74-75.

Before analyzing MRE 403, I shall first examine MCL 768.27a, considering that MCL 768.27a ultimately also requires consideration of MRE 403. MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Here, defendant was accused of committing a listed offense against a minor, CSC-II, and the other-acts evidence entailed listed offenses against minors, CSC-III and CSC-IV.[5] See MCL 768.27a(2)(a); MCL

---

[4] "When other acts are offered to show intent, logical relevance dictates only that the charged crime and the proffered other acts are of the same general category." *VanderVliet*, 444 Mich at 79-80 (quotation marks and citations omitted). "The level of similarity required when disproving innocent intent is less than when proving modus operandi." *Id*. at 80 n 36; see also *People v Mardlin*, 487 Mich 609, 622; 790 NW2d 607 (2010).

[5] The acts against Carter-Matthews constituted CSC-III under MCL 750.520d(1)(a), and the conduct perpetrated against NE constituted CSC-IV under MCL 750.520e(1)(a).

28.722(j), (t), (u)(*x*), and (w)(*iv*) and (*v*). And as discussed above in relation to MRE 404(b), the other-acts evidence was relevant. Furthermore, the fact that defendant was not convicted of any crimes in relationship to the other-acts evidence was not determinative because evidence may be admitted under MCL 768.27a "even if there was no conviction for the other crime." *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008).

MCL 768.27a is subject to the balancing test in MRE 403. *People v Watkins*, 491 Mich 450, 486; 818 NW2d 296 (2012). The *Watkins* Court stated:

> Our conclusion that other-acts evidence admissible under MCL 768.27a remains subject to MRE 403 gives rise to the question of proper application. As with any balancing test, MRE 403 involves two sides of a scale—a probative side and a prejudicial side. Propensity evidence is prejudicial by nature, and it is precisely the danger of prejudice that underlies the ban on propensity evidence in MRE 404(b). Yet were a court to apply MRE 403 in such a way that other-acts evidence in cases involving sexual misconduct against a minor was considered on the prejudicial side of the scale, this would gut the intended effect of MCL 768.27a, which is to allow juries to consider evidence of other acts the defendant committed to show the defendant's character and propensity to commit the charged crime. To weigh the propensity inference derived from other-acts evidence in cases involving sexual misconduct against a minor on the prejudicial side of the balancing test would be to resurrect MRE 404(b), which the Legislature rejected in MCL 768.27a. [*Watkins*, 491 Mich at 486.[6]]

The circuit court analyzed the issue concerning MRE 403 only in the context of answering whether the other-acts evidence was admissible under MRE 404(b), and the court, in conclusory fashion, found that MRE 403 did not preclude admission of the evidence. MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

---

[6] The Supreme Court added:

> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 Mich at 486-487.]

"All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). MRE 403 prohibits the admission of marginally probative evidence that will likely be given undue weight—that is, "evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect." *Id*. at 75-76 (quotation marks and citation omitted).

In the context of the analysis under MCL 768.27a, because other-acts evidence could be presented to show defendant's propensity and character for committing CSC-II and accosting a child, I cannot conclude that the probative value was substantially outweighed by the danger of unfair prejudice. The sexual assault of NE by defendant was very similar to the acts perpetrated against AM. And the sexual acts committed against Carter-Matthews went much further, were frequent in occurrence as part of an ongoing "relationship," and were supported by extremely reliable evidence, as the sexual acts resulted in pregnancy and AM's birth. Additionally, the sexual touching of NE took place in 2016 and the alleged sexual assaults against AM occurred in June 2017 and during the two years preceding that June 2017 assault; therefore, there was close temporal proximity between defendant's actions. Furthermore, there were no "intervening acts" that would weigh in favor of excluding the other-acts evidence. See *Watkins*, 491 Mich at 487-488. The other-acts evidence was admissible, and defendant received the benefit of an inaccurate jury instruction that the jurors were not to consider the evidence for purposes of propensity. The circuit court gave this erroneous instruction because it failed to analyze the issue under MCL 768.27a, even though the statute was raised by the parties.

With respect to MRE 404(b), although a closer call because the other-acts evidence could not be considered for purposes of propensity, the evidence was nonetheless probative of whether defendant intentionally touched AM's genital and breast areas and whether he did so for a sexual purpose, effectively encompassing two elements of CSC-II. M Crim JI 20.2(2) and (3). The other-acts evidence was thus more than marginally probative and this probative value was not *substantially* outweighed by the danger of *unfair* prejudice, even though the evidence was somewhat prejudicial. Moreover, even if the other-acts evidence was not admissible under MRE 404(b), "in cases in which the statute applies, it *supersedes* MRE 404(b)." *Watkins*, 491 Mich at 477 (emphasis added). In sum, I conclude that reversal is unwarranted.

## C. HEARSAY CHALLENGE – AM'S STATEMENTS TO CARTER-MATTHEWS

Defendant argues that the circuit court abused its discretion by allowing Carter-Matthews to repeat statements made to her by AM the day after the sexual assault on June 17, 2017. The majority addresses this issue, and while it does not resolve the matter, it appears to hint at a desired ruling on remand of inadmissibility. The challenged statements include AM's disclosures that defendant touched her in the genital and breast areas over her clothes and that he had been sexually assaulting her for a couple of years. The circuit court admitted the testimony pursuant to MRE 803(3), which, regardless of the declarant's availability, provides a hearsay exception for the following evidence:

A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief

-10-

to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

"[T]he general use of statements of mind that are based on past events . . . violate the purpose of the rule." *People v Moorer*, 262 Mich App 64, 73; 683 NW2d 736 (2004). AM's statements regarding the assaults constituted recollections of past events or, in other words, statements of memory that were being used by the prosecution to prove remembered facts. I agree with the majority that the circuit court erred by admitting the evidence under MRE 803(3).

In the alternative, the prosecutor contends that the statements were admissible under the tender-years exception to hearsay, MRE 803A, which provides, in relevant part, as follows:

A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:

(1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of manufacture;

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule. . . . .

I would hold that Carter-Matthews's testimony regarding AM's statements would have been admissible under MRE 803A. AM was under the age of ten when she made the statements. Further, the testimony by Carter-Matthews reflected that AM's statements were spontaneous and without indication of manufacture.[7] Also, while there was a short delay between the incident and AM telling Carter-Matthews about the sexual assault, the evidence indicated that the delay was caused by fear.[8] And the statements were introduced through the testimony of someone other than declarant AM, i.e., Carter-Matthews.

---

[7] Our Supreme Court has held "that MRE 803A generally requires the declarant-victim to initiate the *subject of sexual abuse*." *People v Gursky*, 486 Mich 596, 613; 786 NW2d 579 (2010). AM did just that in her conversation with Carter-Matthews.

[8] Carter-Matthews testified that AM told her, initially, that she could not say what had occurred because she was "scared."

The parties' arguments regarding MRE 803A are focused on the statutory language that "[i]f the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule." AM claimed that she first disclosed defendant's sexual assault to Seymore and then next informed Carter-Matthews about the assault. Defendant thus contends that the corroborative statements made to Carter-Matthews were not the *first* corroborative statements made by AM. The prosecution argues that because Seymore did not testify to AM making corroborative statements and specifically denied AM's claim that she divulged the abuse to Seymore, the first corroborative statements for purposes of MRE 803A were necessarily those made to Carter-Matthews.

Under defendant's construction of MRE 803A, no one would or could ultimately testify to corroborative statements in this case under MRE 803A, considering that if it is determined that corroborating statements were made to Seymore, Carter-Matthews could not testify to subsequent corroborating statements, yet Seymore's testimony would also lack any revelation of corroborating statements. MRE 803A plainly presupposes a situation in which two or more witnesses, other than the declarant, are actually prepared and willing to testify to corroborating statements, mandating that only the witness who first heard corroborating statements by the declarant may testify to the statements. MRE 803A provides that "only the first [corroborating statement] *is admissible*." (Emphasis added.) This language clearly envisions competing testimonies of corroborating statements. Because a corroborating statement must be introduced by someone other than the declarant, and because Seymore denied that AM made any corroborating statements, there was *nothing to potentially admit regarding corroboration* for purposes of MRE 803A in relation to Seymore's testimony.

In sum, even though the circuit court erred by admitting the testimony under MRE 803(3), Carter-Matthews's testimony concerning AM's corroborating statements was admissible under MRE 803A. See *People v Brownridge (On Remand)*, 237 Mich App 210, 217; 602 NW2d 584 (1999) (even though the trial court erred by admitting hearsay statements under MRE 804[b][3], the statements were admissible under MRE 803[3], and we may affirm where the trial court reached the right result, albeit for the wrong reason).[9]

---

[9] The majority states that the prosecution failed to give notice of its intent to offer the testimony under MRE 803A. MRE 803A provides that "[a] statement may not be admitted under this rule unless the proponent of the statement makes known to the adverse party the intent to offer the statement, and the particulars of the statement, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement." In his brief, defendant argues that the evidence was not admissible under MRE 803A, but he makes no claim that it was inadmissible because of a lack of notice. Moreover, even if the testimony was inadmissible, I could not conclude that defendant was prejudiced given the strength of the untainted evidence of guilt. See MCL 769.26.

## III. CONCLUSION

For purposes of this dissent, it is unnecessary for me to address and analyze the remaining arguments raised by defendant, none of which warrants reversal. For the reasons discussed above, I disagree with the majority's ruling reversing defendant's convictions. I would affirm the convictions. Accordingly, I respectfully dissent.[10]

/s/ Jane E. Markey

---

[10] I do believe that it is necessary for the majority to address defendant's argument regarding the sufficiency of the evidence, which I conclude fails, because a successful sufficiency argument by defendant would result in a full acquittal, not simply a new trial.