ON REMAND
 

 Before: Neff, P.J., and Fitzgerald and Smolensk!, JJ.
 

 Per Curiam.
 

 This case is before us for the second time. In our prior decision, the panel held that reversal of defendant’s convictions was required because the trial court abused its discretion in limiting defendant’s presentation of character evidence.
 
 People v Brownridge,
 
 225 Mich App 291, 295-298; 570 NW2d 672 (1997). After granting the prosecution’s applica
 
 *212
 
 tion for leave to appeal, 458 Mich 865 (1998), the Supreme Court reversed in part this Court’s judgment and reinstated defendant’s convictions, finding that the trial court’s decision to exclude the evidence was not an abuse of discretion.
 
 People v Brownridge,
 
 459 Mich 456; 591 NW2d 26 (1999).
 
 [1]
 

 Thereafter, in response to defendant’s motion for rehearing, the Supreme Court amended its order and remanded this case to this Court “for consideration of defendant’s claims of error which were not ruled on by the Court of Appeals in light of its reversal of defendant’s conviction on other grounds.” 459 Mich 1275 (1999).
 
 [2]
 
 In accordance with the Supreme Court’s directive, we now address defendant’s other issues. After doing so, we affirm defendant’s convictions and sentences.
 

 i
 

 The underlying facts were set forth in our previous opinion as follows:
 

 The prosecutor’s theory of the case was that defendant induced Raymond Turner (hereafter Turner) to set fire to a house in Three Rivers that defendant was purchasing on land contract. The fire chief and a state police fire marshal established that the fire was arson, probably started by flammable liquids on the front porch. Turner’s body was found in a river near the house two days after the fire. The pathologist established the cause of death as drowning.
 

 
 *213
 
 Turner’s wife, Deanna Turner, testified that on the day before the fire Turner drove with defendant to defendant’s house for a conversation, and returned approximately fifteen minutes later. Turner told Deanna that defendant had asked him to bum down a house in Three Rivers, and that Turner was going to do it because he needed the money. Deanna testified that Turner told her that defendant had given him money to buy gasoline. Deanna testified that she tried, unsuccessfully, to dissuade Turner from setting the fire.
 

 Turner’s brother, Scott Turner, testified pursuant to an agreement with the prosecutor in which the thirty years’ imprisonment he faced for the commission of arson as an habitual offender would be reduced to two years’ probation. Scott testified that on the night of the fire, Turner told him that he needed help burning down a house for the insurance money. Scott testified that when he could not talk Turner out of committing the arson, he drove Turner toward defendant’s house and dropped him off.
 

 Sergeant Earl Stark of the Three Rivers Police Department testified regarding his investigation of the fire and the finding of Turner’s body. Stark testified that he obtained statements from both Deanna and Scott, both of which implicated defendant in the arson. At trial, the defense theory was that Stark, the lead investigator, had a personal dislike for defendant and that he threatened Scott into implicating defendant and that Stark also convinced Deanna to accuse defendant of asking Ray Turner to commit the arson.
 
 [Brownridge,
 
 225 Mich App 294-295.]
 

 n
 

 Defendant argues that reversal is required because the prosecutor failed to disclose during discovery that Deanna, who was an important prosecution witness, was under investigation for felony welfare fraud. We disagree.
 

 
 *214
 
 The record reveals that in December 1993 the Department of Social Services (now Family Independence Agency [fia]) began an investigation of Deanna regarding possible welfare fraud. In June 1994, Deanna testified at defendant’s first trial, which ended in a mistrial. Deanna also testified at defendant’s second trial, which took place in November 1994 and resulted in defendant’s convictions. During an interview a few weeks later, on December 1, 1994, Deanna admitted her failure to report her husband’s income. A warrant was authorized against Deanna on December 16, 1994, for two counts of felony welfare fraud. After defendant was sentenced on January 13, 1995, Deanna pleaded guilty of the misdemeanor of failure to inform and was sentenced to twenty-four months’ probation.
 

 In his motion for a new trial, defendant argued that the prosecutor’s office and the fia investigators conspired to delay the filing of the felony charges against Deanna so her testimony at defendant’s trial could not be impeached. Defendant also suggested that the prosecution may have offered Deanna some sort of deal regarding her testimony against defendant that was not disclosed to the defense. In denying defendant’s motion for a new trial, the trial court noted that there was simply no evidence supporting defendant’s theories.
 

 Without question, a criminal defendant has a due process right of access to certain information possessed by the prosecution.
 
 People v Lester,
 
 232 Mich App 262, 280; 591 NW2d 267 (1998), citing
 
 Brady v Maryland,
 
 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Impeachment evidence, as well as exculpatory evidence, falls within the
 
 Brady
 
 rule.
 
 Id.
 
 Moreover, as
 
 *215
 
 defendant correctly notes, the fact that a prosecution witness has charges pending against him is particularly relevant to the issue of the witness’ interest in testifying and may be admitted for impeachment purposes.
 
 People v Hall,
 
 174 Mich App 686, 691; 436 NW2d 446 (1989). Therefore, the prosecution has a duty to disclose charges pending against a witness.
 
 People v Torrez,
 
 90 Mich App 120; 282 NW2d 252 (1979).
 

 However, defendant has cited no authority supporting the conclusion that the prosecution has a duty to disclose that a witness is under investigation in an unrelated matter, nor are we disposed to so hold in the absence of precedent. Moreover, as noted by the trial court, defendant’s accusations in the present case have no factual support in the record. Defendant has not established whether the investigation was active when Deanna testified at his trial, and, if so, whether Deanna or the prosecution was aware of the investigation. Accordingly, we find that defendant has failed to establish a
 
 Brady
 
 violation and that the trial court did not err in denying defendant’s motion for a new trial on this ground.
 

 in
 

 Defendant also argues that he was denied a fair trial because the prosecutor made the following remark during rebuttal argument:
 

 He [defense counsel] says where is the witness that saw Deanna and Raymond at the garage.
 
 The witness was [defendant] himself.
 
 [Emphasis added.]
 

 
 *216
 
 As the panel noted in its original opinion, the comment was an improper comment concerning a defendant’s failure to testify.
 
 Brownridge,
 
 224 Mich App 299.
 

 However, this does not end our inquiry. Rather, as our Supreme Court has recently held, “a preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative.”
 
 People v Lukity,
 
 460 Mich 484, 496; 596 NW2d 607 (1999) (internal quotation omitted). Defendant bears the burden of demonstrating that such an error resulted in a miscarriage of justice.
 
 Id.
 
 at 493. Our review of the record satisfies us that this isolated comment, in an otherwise proper rebuttal argument, does not require reversal of defendant’s convictions.
 

 rv
 

 Defendant next argues that reversal is required because the trial court admitted various hearsay declarations of Turner, the deceased arsonist. Again, we disagree.
 

 At issue here are Turner’s alleged statements to Deanna and Scott that he was going to bum down defendant’s house at defendant’s request and that defendant paid for the gasoline to start the fire and would later give Turner a share of the insurance proceeds. In its original opinion, the panel held that the trial court erred in admitting the statements as declarations against penal interest pursuant to MRE 804(b)(3), but noted that the statements might be admissible pursuant to MRE 803(3) as a statement of Turner’s then existing state of mental, emotional, or physical condition. Because the Court reversed on
 
 *217
 
 other grounds, however, the panel left the admissibility of each challenged statement for the trial court’s consideration on retrial.
 
 Brownridge,
 
 224 Mich App 306.
 

 Deanna’s and Scott’s testimony regarding Turner’s out-of-court statements to them is clearly hearsay. MRE 802. However, MRE 803(3) provides that the following is not excluded by the hearsay rule:
 

 (3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) ....
 

 As the panel noted in its original opinion, “Turner’s declarations of intent to bum down defendant’s house were certainly relevant, and, insofar as the statements had some bearing on the issue of defendant’s conduct, they may properly be admitted.”
 
 Brownridge,
 
 224 Mich App 305-306. After a careful examination of the record, we are satisfied that each of the challenged hearsay statements falls within the exception to the hearsay rule contained in MRE 803(3). Consequently, the trial court’s error in admitting the hearsay statements pursuant to MRE 804(b)(3) was harmless.
 
 People v Chavies,
 
 234 Mich App 274, 284; 593 NW2d 655 (1999) (this Court may affirm where the trial court reaches the right result, albeit for the wrong reason).
 

 v
 

 In light of our Supreme Court’s decision in
 
 Brownridge,
 
 459 Mich 456, and having found no
 
 *218
 
 grounds for reversal in defendant’s remaining issues, we affirm defendant’s convictions and sentences.
 

 Affirmed.
 

 [1]
 

 The Court also denied defendant’s application for leave to appeal.
 
 People v Brownridge,
 
 unpublished order of the Michigan Supreme Court, entered April 20, 1999 (Docket No. 110570).
 

 [2]
 

 Pursuant to our Court policy, Judge Fitzgerald has been substituted for visiting Judge D. A. Roberson.