*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
August 13, 2020

v

No. 346402
Macomb Circuit Court
LC No. 2018-000335-FH

TORRES LEON POWELL,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant was convicted by jury of possession of another's financial transaction device with intent to use, deliver, circulate, or sell, MCL 750.157p, and unlawfully driving away a motor vehicle, MCL 750.413. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 3 to 15 years' imprisonment for possession of another's financial transaction device with intent to use, deliver, circulate, or sell and 3 to 27 years' imprisonment for unlawfully driving away a motor vehicle. At trial, the court granted defendant's motion for a directed verdict of acquittal as to one count of possession of another's financial transaction device with intent to use, deliver, circulate, or sell, and one count of receiving and concealing stolen property with a value less than $200, MCL 750.535(5); see also MCR 6.419. Defendant appeals as of right. We affirm.

## I. UNDERLYING FACTS

This case arises out of several thefts that occurred during the early morning hours of December 12, 2017. At approximately 4:00 a.m., defendant was walking in a residential neighborhood when he approached a vehicle that was idling on the street, entered it, and began to drive away. As a result of the wintry conditions at that time, the owner of the vehicle was able to catch up to defendant on foot, pull him out of the vehicle, and prevent him from taking the vehicle. A neighborhood resident came to the car owner's assistance, restraining defendant while the car's owner called the police. Several Macomb County Sheriff Deputies arrived and arrested defendant. Defendant was then searched, and the deputies determined that defendant was in possession of several items, one of which was a Macomb Community College identification card that belonged to KT. KT's Macomb Community College identification card had a MasterCard logo on it. Upon

investigation, a Macomb County Sheriff Deputy determined that an individual had broken into KT's vehicle and stolen her Macomb Community College identification card.

At trial, defendant took the stand and testified in his own defense. During cross-examination, the prosecutor asked whether defendant had stated his version of the facts—that he was the victim of police brutality—on the record in any previous hearings or whether defendant had told any other individuals his version of the facts prior to the date of trial. During this exchange, the prosecutor elicited testimony that defendant had three prior attorneys in this case. Defendant's trial attorney objected to this line of questioning, but failed to request a curative jury instruction. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

A valid criminal conviction requires proof beyond a reasonable doubt of every element of every crime. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994). A challenge to the sufficiency of the evidence to support a criminal conviction presents a question of law subject to review de novo. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001). When reviewing the sufficiency of evidence in a criminal case, a reviewing court must view the evidence of record in the light most favorable to the prosecution to determine whether a rational trier of fact could find that each element of the crime was proved beyond a reasonable doubt. *Id*.

MCL 750.157m(f) defines a financial transaction device as an electronic funds transfer card, a credit card, a debit card, or any instrument that can be used to obtain goods, services, or any other thing of value. MCL 750.157m(f).

At trial, the prosecution admitted a picture of KT's Macomb Community College identification card as an exhibit. We have examined that exhibit, and it obviously depicts what any reasonable person would regard as a credit or debit card, replete with: (1) the logo of MasterCard, a corporation dedicated to electronic financial transactions;[1] (2) an expiration date in the recognizable style expected of common credit cards; (3) an ID number in the recognizable style of a common credit card; and (4) the word "Debit" prominently displayed over what appears to be a hologram in the recognizable style of a common credit card. KT had never tried to use it to make a financial transaction, and although she speculated that "they must have created an account for me through Macomb to buy books," she believed it was "just part of the school." Nevertheless, it is irrelevant whether KT ever used it to make a financial transaction, or was even aware that she could do so. The touchstone is whether it *can* be used to obtain goods, services, or any other thing of value. See MCL 750.157m(f)(v)(A).

On the facts of this case, we need not further explore the boundaries of what might be a financial transaction device. As the trial court correctly found, the evidence unambiguously establishes that this card was a financial transaction device.

---

[1] MasterCard's website explains that MasterCard's primary business entails facilitating financial transactions. See < https://www.mastercard.us/en-us/about-mastercard/what-we-do.html >.

## III. PROSECUTORIAL MISCONDUCT[2]

Defendant argues that the prosecutor denied defendant a fair trial by questioning him about how many attorneys represented defendant in this case before trial. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010) (citation and quotation marks omitted). Defense counsel contemporaneously objected to the prosecutor's line of questioning regarding the number of attorneys that had previously been assigned to represent defendant, but failed to request a curative instruction. The trial court's response to the objection was unclear, but it stated that it would take defendant's answer, thus implicitly overruling the objection. Because the trial court thus clearly believed the prosecutor's questioning was not improper, any request by defendant for a curative instruction would have been futile. Parties are generally not obligated to engage in futile gestures to preserve their appellate rights. See, e.g., *Miller v Hensley*, 244 Mich App 528, 532 n 2; 624 NW2d 582 (2001). Thus, we consider the issue preserved.

"Issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Even if preserved, a nonconstitutional error does not constitute grounds for reversal unless, after an examination of the entire case, it affirmatively appears more probable than not that the error was outcome-determinative. *People v Brownridge*, 237 Mich App 210, 216; 602 NW2d 584 (1999).

### B. ANALYSIS

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007) (citations omitted). This Court "must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments." *People v Lane*, 308 Mich App 38, 62-63; 862 NW2d 446 (2014). Furthermore, this Court "cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476.

---

[2] As this Court noted in *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015), although the term "prosecutorial misconduct" has become a term of art often used to describe *any* error committed by the prosecution, claims of inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " We view the prosecutor's actions in this case as falling more in line with "prosecutorial error" than "prosecutorial misconduct," but choose to use the term "prosecutorial misconduct" here to maintain consistency with the terminology used by the parties and the prevailing use of the term as a term of art in other cases.

Defendant argues that the prosecutor's line of questioning was improper because it was an attack on defendant's character, portraying him as someone who was unable to get along with others despite the fact that defendant addressed the trial court at the arraignment hearing and stated, "I'm the victim here. I never did nothing wrong. They tased me and stomped me out." Defendant explained that he had consistently maintained that he was an innocent victim of police brutality and a setup, and he had multiple attorneys because "nobody would believe [him]." We conclude that it was improper for the prosecutor to specifically inquire into how many attorneys defendant had, but we disagree that the prosecutor's line of questioning was otherwise improper or that defendant was deprived of a fair trial as a result.

In general, when "a defendant takes the stand and testifies in his own defense, his credibility may be impeached and his testimony assailed like that of any other witness." *People v Fields*, 450 Mich 94, 110; 538 NW2d 356 (1995). The prosecutor may therefore cross-examine a defendant testifying as a witness regarding any matter relevant to the defendant's credibility. See *People v Reid*, 233 Mich App 457, 477; 592 NW2d 767 (1999). There is no particular obligation for the prosecution to do so in the "blandest possible" manner. See *Dobek*, 274 Mich App at 66. However, the prosecutor must avoid "injecting issues broader than the guilt or innocence of the accused under the controlling law." *People v Henderson*, 408 Mich 56, 65 n 18; 289 NW2d 376 (1980) (quotation omitted).

When viewed in the context of defendant's testimony, it is apparent that the prosecutor was properly attempting to undermine the credibility of defendant's recitation of the facts that led to his arrest, rather than improperly attacking defendant's character and portraying him as someone who was unable to get along with others. Before the prosecutor inquired about defendant's prior attorneys, defendant had taken the stand and disputed the testimony of the vehicle owner and Macomb County Sheriff's Deputy Christopher Heythaler. The prosecutor specifically asked defendant whether the vehicle owner, Deputy Heythaler, and KT testified truthfully, and defendant answered that they had not. The prosecutor asked defendant whether he filed a police report or informed others that he was shot with a Taser and beaten by two police officers. Defendant answered that he had not. The prosecutor also asked defendant whether he had articulated his police brutality and setup theory on the record at any previous hearings. Defendant responded that he had attempted to voice his theory at several prior hearings. Taken in context, the prosecutor's inquiry about defendant's previous attorneys appears to have been part of an attempt to undermine the credibility of defendant's version of the facts.

We emphasize that the particular number of attorneys retained by a person is not probative of that person's credibility, MRE 608, nor is it relevant to whether the person or any other witness is telling the truth about any fact at issue, MRE 401. Thus, its nonexistent probative value would be substantially outweighed by the danger that the jury might give any weight to the number of previous lawyers. MRE 403. However, as noted, it appears that the prosecutor intended to argue that if defendant had reported his version of the facts to his lawyers, surely one of them would have acted upon that information. There is nothing improper about the prosecutor suggesting that defendant's version of the facts might be recently fabricated and attempting to elicit testimony more consistent with fabrication than with truth; i.e., that defendant's testimony on the stand was the first time anyone had heard defendant's police brutality theory. Again, the specific number of attorneys defendant had is not relevant, so it was improper for the prosecutor to conduct a searching

inquiry into that number. However, we decline to conclude that the prosecutor engaged in misconduct.

In any event, defendant has failed to show that he was prejudiced by the prosecutor's line of questioning; i.e. that it affirmatively appears more probable than not that the error was outcome-determinative. *Brownridge*, 237 Mich App at 216. First, a curative jury instruction, which defendant did not request, could have alleviated any prejudicial effect that the prosecutor's line of questioning may have had because jurors are presumed to follow their instructions. *People v Bruner*, 501 Mich 220, 228; 912 NW2d 514 (2018). Notably, defendant affirmatively stated that the reason why he had several lawyers was that no one would believe him, and he had attempted to assert his version of the facts at prior hearings. In other words, defendant *had* consistently maintained his version of the facts from the outset, which, if believed by the jury, seriously undermined the prosecutor's apparent goal in making the inquiry. Finally, the evidence against defendant was substantial, and any effect the improper question had on defendant's credibility would not have affected the credibility of any other witness.

Several witnesses testified regarding defendant's involvement in the events that ultimately led to defendant's arrest on December 12, 2017. The vehicle owner testified that defendant attempted to drive away in his pickup truck, and an individual subdued defendant until the police arrived. Deputy Heythaler testified that he helped another deputy arrest defendant, and defendant was in possession of "a couple credit cards or debit cards" and KT's driver's license at the time of his arrest. KT testified that she lived approximately one block from the location of defendant's arrest, and her vehicle had been broken into that same night. KT stated that the individual that broke into her vehicle took her Macomb Community College identification card, which had a MasterCard logo on it. Based upon the consistent testimony of the vehicle owner, Deputy Heythaler, and KT, the prosecutor's line of questioning regarding defendant's prior attorneys did not affect the outcome of the trial, or even affect this evidence in any way. Considering the weight of the evidence presented by the prosecution, the jury's knowledge that defendant had four attorneys throughout this case was likely not outcome determinative. Thus, reversal is not required. See *Brownridge*, 237 Mich App at 216.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Jonathan Tukel