*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RICHARD GLEN SMITH, JR.,

        Defendant-Appellant.

UNPUBLISHED
June 24, 2021

No. 352327
Oakland Circuit Court
LC No. 2018-269136-FC

Before: GLEICHER, P.J., and CAVANAGH and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of assault by strangulation, MCL 750.84(1)(b).[1] The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 4½ to 40 years' imprisonment for assault by strangulation. On appeal, defendant argues that his trial counsel failed to provide effective assistance of counsel and that the trial court erred by denying defendant's attempts to introduce impeachment evidence. We affirm.

## I. FACTUAL BACKGROUND

On October 29, 2018, defendant drove the victim, his former stepdaughter, to his motorhome. According to the victim, defendant accused her of selling her daughter for drugs several years ago and of being involved in another matter that led to defendant's money and cellphone being taken. The victim denied defendant's accusations, but defendant physically assaulted her by slapping and punching her. Defendant then dragged her by her hair into his bed,

---

[1] The jury acquitted defendant of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1) (multiple variables). In the felony information, the prosecutor charged defendant with CSC-I under the following circumstances: "[D]efendant was armed with a weapon or any article use [sic] or fashioned in a manner to lead the victim to reasonably believe it to be a weapon and/or defendant effected [sic] sexual penetration through force or coercion and the victim sustained personal injury." The trial court instructed the jury consistently with the felony information.

where he pushed her face into the pillows with his hand on the back of her neck three times. In the pauses between those acts, defendant continued to punch and strangle her with his hands.

Once defendant finished his physical attack, he instructed the victim to perform fellatio on him, but she refused. Defendant waved a firearm at the victim and forced himself upon her.[2] Defendant engaged in penile-vaginal penetration without a condom for several minutes before ejaculating on the victim's abdomen. Defendant was not holding the firearm while he penetrated the victim, but she could see the firearm next to her. Defendant used tissue to clean the victim's abdomen.

Afterward, the victim was able to get to the bathroom, where she wiped off additional semen with toilet paper that she disposed of near the shower. She also contacted her boyfriend with either her phone or defendant's phone, told her boyfriend what had happened, and instructed him to meet her at a gas station. While it was unclear from the victim's testimony, either before or after she contacted her boyfriend, defendant decided the victim would blame the assault on the victim's boyfriend or ex-boyfriend. The victim agreed with this plan in order to get away from defendant.

Defendant kept apologizing and eventually took the victim to a gas station to buy her cigarettes to calm her. While defendant was inside, the victim got into her waiting boyfriend's vehicle.

The victim then went to the hospital for a physical (but not sexual) examination and provided a statement to the police. The victim's medical records reflect bruising to her eye and right forearm as well as redness on her upper right arm and neck. She also had "a lot of swelling of the soft tissue" on her face and head. And the responding police officer described her voice as "very hoarse," "low," and "raspy."

Thereafter, the victim went to another facility for a sexual assault examination. The nurse who performed the sexual assault examination testified that the victim had multiple injuries to her head, neck, shoulders, and upper arms, and that the victim's voice was "[a] bit raspy." Certain of those injuries were consistent with strangulation, including petechiae on her upper chest and mouth as well as three petechiae in her right eye. Numerous photographs depicting these various injuries were admitted.

A forensic scientist also testified at trial. She opined that it was 100 sextillion times more likely that the victim, defendant, and an unknown third individual contributed DNA to a sample taken from the victim's abdomen[3] than that the victim and two unknown individuals contributed to the sample.

_____

[2] Although defendant was previously convicted of sexually assaulting the victim, *People v Smith*, unpublished per curiam opinion, issued June 8, 2001 (Docket No. 221173), the trial court excluded evidence regarding those acts in the prosecution's case-in-chief, but permitted them in rebuttal if defendant opened the door.

[3] The victim had a prior recent consensual encounter.

Although defendant did not testify at trial, Detective Brian Martin testified that he interviewed defendant twice and defendant admitted to hitting the victim because he became enraged. Defendant also told Detective Martin that it was "very possible" he strangled the victim, but, because defendant was so enraged, he could not remember doing so. Defendant asserted that he and the victim had consensual sex, but, again due to his rage, he could not remember whether it was before or after he hit her. After obtaining a search warrant, Detective Martin searched defendant's motorhome and found wadded up tissue next to the shower; however, he did not locate a firearm. The police also took photographs. Along with the photographs depicting the victim's injuries, the victim identified two photographs of the toilet in defendant's motorhome that contained blood she spat out as a result of defendant's assault.

At trial, defense counsel suggested that the victim was a liar for numerous reasons—the victim's recent felony retail-fraud conviction, the lack of documented bodily injury below the victim's waist, the DNA evidence excluding defendant as a contributor to the victim's vaginal swab, the failure of the police to locate the firearm, the victim's lack of eye contact with the jurors, and the victim's alcohol and drug use. At best, defendant committed an assault and battery and the victim's more serious injuries were inflicted by the victim's boyfriend.

The jury found defendant guilty of assault by strangulation, but acquitted defendant of CSC-I. Defendant now appeals.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues his trial counsel performed deficiently by failing to lay the foundation to impeach the victim with a prior inconsistent statement about who strangled her and failing to articulate to the trial court the proper rule of evidence under which this evidence was admissible. On appeal, defendant contends that the victim's credibility was of great importance to his case as her testimony provided the sole basis for finding that he strangled her. That being so, defendant asserts that there is a reasonable probability that, but for trial counsel's deficient performance, the result of the trial would have been different. Because defendant has failed to establish the factual basis for his claim, we disagree.

### A. STANDARD OF REVIEW

A claim of ineffective assistance of counsel generally presents a mixed question of fact and law, with findings of fact, if any, being reviewed for clear error and constitutional questions being reviewed de novo. *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019). However, defendant did not move for an evidentiary hearing or a new trial in the trial court, and this Court denied his motion to remand for an evidentiary hearing. *People v Smith*, unpublished order of the Court of Appeals, entered December 2, 2020 (Docket No. 352327). When there has been no evidentiary hearing, our review is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

### B. APPLICABLE LAW

Trial counsel is presumed to provide effective assistance, and a defendant bears a heavy burden to overcome that presumption. *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015).

To demonstrate ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient, and that there is a reasonable probability that but for that deficient performance, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A defendant must establish a factual basis for an ineffective-assistance-of-counsel claim. [*Hoang*, 328 Mich App at 64 (quotation marks and citations omitted).]

In addition, what evidence to present is presumed to be a matter of trial strategy, *Jackson*, 313 Mich App at 431-432, and this Court will not substitute its judgment for that of counsel on matters of trial strategy, *Payne*, 285 Mich App at 190.

Defendant's claim of ineffective assistance of counsel involves impeachment with a prior inconsistent statement. "The credibility of a witness may be attacked by any party, including the party calling the witness." MRE 607. One method of impeaching the credibility of a witness is by questioning the witness about her previous statements. However, "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." MRE 613(b). "When a party attempts to impeach a witness or refresh the witness'[s] memory with a prior inconsistent statement made by that witness, a proper foundation must be laid by questioning the witness concerning the time and place of the statement and the person to whom it was allegedly made." *People v Rodriguez*, 251 Mich App 10, 34; 650 NW2d 96 (2002). And, "the witness need only be provided with the opportunity to address the alleged inconsistency *at some point* during the trial." *People v Parker*, 230 Mich App 677, 682-683; 584 NW2d 753 (1998) (emphasis added). Thus, the foundation need not be laid before extrinsic evidence of a prior inconsistent statement is admitted "so long as the witness has the opportunity to explain the statement." *Id*. at 683 (quotation marks and citation omitted).

## C. DISCUSSION

Defendant's trial counsel announced his intention to call CA, defendant's daughter and the victim's sister, to testify. Based on an earlier police interview, the prosecutor believed that any testimony CA would offer would be hearsay and asked for an offer of proof. Defense counsel stated that CA would testify about something she observed in September 2019, while in the presence of the victim and some other individuals:

[CA] will testify, not to what was said by the victim, but what the victim did in this encounter. And what the victim did, as an offer of proof, was to demonstrate, on [the victim's] own body, how she was choked by someone. And I do not intend to ask who the person—who [the victim] said choked her. Actions speak louder than words. And I will—I do intend to ask [CA] if at some point she learned—well, I'm going to ask her what she thought [the victim] was doing by these motions, and then at some point I'm going to ask her, at some point did you learn who did these motions, or did these actions to the victim], and did you come to find out that it was [defendant]. And her answer will be no.

The prosecutor objected, noting that, in part, CA's testimony called for speculation. Defense counsel, the prosecutor, and the trial court then engaged in a lengthy back-and-forth discussion of various hearsay rules, often moving on to a new issue before fully addressing the previous one. Overall, defense counsel argued that CA's testimony was admissible as a then-existing mental, emotional, or physical condition under MRE 803(3) and that CA could properly testify as to what she thought the victim meant. Alternatively, CA's testimony was not hearsay because it was not offered to prove the truth of the matter asserted, but to show the effect it had on CA and what she did as a result of observing the victim's choking motions. As a third option, CA's testimony was a present sense impression under MRE 803(1). And, lastly, CA's testimony was not hearsay because it was a party-opponent admission under MRE 801(d)(2) as the victim, who was the complaining witness, was an agent of the prosecution. Defense counsel summed up the aim of his arguments by stating:

> Well, if the Court will permit me to backtrack one step, okay. What I'm arguing here in plain English . . . is that this is a non-hearsay statement, referring to [CA's] proposed testimony, that is a prior—which shows a prior inconsistent statement made by [the victim]. [The victim] testified at length that [defendant] strangled her or choked her. The statement I am trying to introduce through [CA] is obviously totally inconsistent with that because her—referring to [the victim]—her demonstration would put the lie, or give the lie to [the victim's] testimony, you see. This is not hearsay.

The trial court disagreed and ruled that defense counsel could call CA as a witness, but he could not question her about the victim's demonstration because it was an out-of-court statement offered for the truth of the matter asserted.

Defense counsel called CA as a witness, and she testified that she was at her home with the victim and "Carl" on September 4, 2019. CA testified that, around 11:00 p.m., the victim did something "unusual," at which point the prosecutor objected, the trial court sustained the objection, and defense counsel moved on, eliciting testimony that CA stopped all contact with the victim after this unusual event despite their being in regular communication before that time.

On appeal, defendant argues trial counsel called CA as a witness "to elicit testimony from her about a statement made by [the victim] that directly contradicted [the victim's] testimony that [defendant] was the person who strangled her." If defendant's assertion about the substance of CA's testimony is true *and* trial counsel was responsible for his failure to elicit the testimony from CA, trial counsel performed deficiently. Furthermore, the only basis for the jury to conclude that defendant strangled the victim came from the victim's testimony. Even though defendant admitted to Detective Miller that he assaulted the victim and it was "very possible that he did strangle her," defendant did not positively admit that he strangled the victim. Thus, the jury could have taken defendant at his word, disbelieved the victim regarding the strangulation, and found defendant guilty of the lesser included offense of assault and battery.

If CA's testimony would have been consistent with what defendant asserts on appeal, it easily falls within the confines of MRE 613(b) because it was extrinsic evidence of a witness's prior inconsistent statement. Further, while trial counsel failed to lay the foundation required by MRE 613(b) for admitting extrinsic evidence, he could have recalled the victim and laid the proper

foundation, either before or after eliciting the inconsistent statement from CA. *Parker*, 230 Mich App at 682-683. And, while we presume trial counsel engaged in sound trial strategy, there was simply no reason for trial counsel to have failed to elicit this testimony from CA. Compare *People v Clark*, 330 Mich App 392, 427; 948 NW2d 604 (2019) (denying the defendant's ineffective-assistance-of-counsel claim because this Court *could* conceive of a legitimate strategic reason for trial counsel's conduct). Moreover, there would be a reasonable probability that, but for trial counsel's failure to elicit this testimony, the jury would have found the victim to not be credible and found defendant not guilty of assault by strangulation. *Hoang*, 328 Mich App at 64.

But this Court's review is limited to mistakes apparent on the record, *Payne*, 285 Mich App at 188, and defendant's assertion on appeal regarding CA's proposed testimony is not supported by the record. Certainly, the latter part of trial counsel's offer of proof—that CA's description of the victim's demonstration would "put the lie" to the victim's testimony that defendant strangled her—supports defendant's argument on appeal. However, trial counsel's earlier explanation—that CA would testify about the victim's demonstration and that she "at some point" learned someone else was responsible for strangling the victim—is not sufficiently detailed. The offer of proof was not clear whether CA learned who strangled the victim from the victim or from some other source, and defendant again failed to clarify this on appeal. This fact is crucial to defendant's argument because if CA did not learn this information from the victim, CA was not providing extrinsic evidence of a prior inconsistent statement of the victim, which is the basis for admission of this evidence on which defendant relies. Without this information, there is no way to know what type of evidence CA would have provided, or even if it would have been admissible. Because the record is unclear on this point, defendant has failed to provide the necessary factual basis to support his claim that trial counsel performed deficiently. *Hoang*, 328 Mich App at 64. Accordingly, defendant has failed to establish his claim of ineffective assistance of counsel and is not entitled to relief on this ground.

## III. IMPEACHMENT EVIDENCE

Defendant next argues the trial court erred by excluding evidence of the victim's 2008 misdemeanor conviction and by excluding CA's testimony about the victim's character for untruthfulness. While the trial court did not err by excluding evidence of the victim's misdemeanor conviction, it erred in excluding CA's testimony. That error, however, was harmless.[4]

---

[4] Defendant also argues these alleged errors deprived him of his right to present a defense, but we decline to address this argument because he abandoned the issue by failing to properly address it in his brief on appeal. *People v Smart*, 304 Mich App 244, 251; 850 NW2d 579 (2014) ("An appellant may . . . not merely announce a position and leave it to this Court to rationalize the basis for the claim, or elaborate the argument."). While defendant's brief includes this issue in his statement of the questions presented and provides the relevant background law, he advances no argument that he was arbitrarily or disproportionately denied the ability to present a defense. See *People v Unger*, 278 Mich App 210, 249-251; 749 NW2d 272 (2008) (quotation marks and citation omitted) (explaining that a trial court's ruling in conformity with the Michigan Rules of Evidence does not infringe a defendant's right to present a defense, provided the rules are not "arbitrary or disproportionate to the purposes they are designed to serve.").

## A. IMPEACHMENT BY A PRIOR MISDEMEANOR CONVICTION

Under MRE 609, a party may, under certain circumstances, impeach a witness with evidence of a previous conviction. Such evidence may only be admitted if it "has been elicited from the witness or established by public record during cross-examination." MRE 609(a). In addition, a crime is only admissible for impeachment purposes if:

(1) the crime contained an element of dishonesty or false statement, or

(2) the crime contained an element of theft, and

(A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

(B) the court determines that the evidence has significant probative value on the issue of credibility . . . . [MRE 609(a).]

"Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." MRE 609(c).

In other words, when the prior conviction contains an element of dishonesty of false statement, it is automatically admissible. *People v Allen*, 429 Mich App 558, 605; 420 NW2d 499 (1988). If it does not, the court must determine whether it contains an element of theft, and, if so, determine whether it was punishable by more than one year in prison and whether it has significant probative value on the issue of the witness's credibility. MRE 609(a)(2).

Before the victim was called to the stand on the second day of trial and defense counsel could continue with his cross-examination, he informed the trial court that he had just discovered the victim had two prior convictions that could be used to impeach her credibility. One of the convictions was for first-degree retail fraud, MCL 750.356c, a felony for which the victim had pleaded guilty less than two weeks before defendant's trial. The trial court ruled that defendant could introduce evidence of that conviction. Defendant subsequently questioned the victim about this conviction in front of the jury and admitted a certified court record as proof of the victim's conviction.

But the trial court excluded evidence of the victim's misdemeanor conviction. Defense counsel did not name the offense on the record. The prosecutor noted the case originated in 2008 and was closed in 2012, and, without elaboration, argued it fell outside the 10-year limitation of MRE 609(c). In response, defense counsel mentioned that the victim was sentenced to probation, which she violated, causing the case to remain open until July 2012. This, defense counsel argued, qualified as "confinement" under MRE 609(c). After questioning eliciting that the victim was on probation rather than in jail, the trial court excluded the evidence.

As already mentioned, defense counsel did not name the prior misdemeanor conviction he sought to use for impeachment.[5] MRE 103(a)(2) ("Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."). In order to review the issue, this Court requested the parties to provide a certified copy of the record of conviction that defense counsel possessed at trial. See MCR 7.210(A)(3) ("The substance or transcript of excluded evidence offered at a trial and the proceedings at the trial in relation to it must be included as part of the record on appeal."); MCR 7.210(C) ("Within 21 days after the claim of appeal is filed, a party possessing any exhibits offered in evidence, whether admitted or not, shall file them with the trial court or tribunal clerk . . . .") Although trial counsel failed to produce the proposed exhibit, defendant's appellate counsel obtained a certified copy of a 50th District Court misdemeanor larceny conviction based on a city ordinance violation that counsel represents is the conviction in issue. Recognizing that this conviction occurred in the same jurisdiction as the felony matter and matches the parameters of the misdemeanor offense described on the record—it occurred in 2008 and additional activity occurred in 2012, we take judicial notice of the victim's 2008 misdemeanor larceny conviction under MRE 201.

A simple larceny conviction is not a misdemeanor that involves an element of false statement or dishonesty under MRE 609(a). *People v Parcha*, 227 Mich App 236, 244-245; 575 NW2d 316 (1997). And, although larceny is a crime involving theft, it was not a crime punishable by more than one year in prison. See Pontiac Municipal Code, § 86-191. Therefore, the trial court did not err in disallowing the victim's misdemeanor larceny conviction to be used to impeach her under MRE 609(a)(2)(A). *People v Brownridge (On Remand)*, 237 Mich App 210, 217; 602 NW2d 584 (1999) (this Court may affirm when the trial court reaches the right result, albeit for an incorrect reason).

## B. REPUTATION FOR UNTRUTHFULNESS

As a general rule, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ." MRE 404(a). This rule, however, has several exceptions. Relevant to this appeal, MRE 404(a)(4) allows for the admission of evidence of the witness's character as provided in MRE 607, 608, and 609. As already mentioned, MRE 607 permits any party to attack a witness's credibility. MRE 608(a) provides:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of

---

[5] We recognize that the recording of defense counsel discussing the victim's two prior convictions appears not to have captured the beginning of counsel's discussion. While it is possible that counsel mentioned the specific crime before the recording began, defendant has not moved to correct the transcript. See *People v Abdella*, 200 Mich App 473, 476; 505 NW2d 18 (1993) (providing the requirements for correcting an inaccuracy in a transcript).

truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

At trial, CA testified that the victim is her older sister, whom she has known for 32 years. The following exchange occurred when defense counsel questioned CA about the victim on direct examination:

> [*Defense Counsel*:]  Do you have any idea what her reputation for truthfulness is?
>
> [*Prosecutor*]:  Objection, Judge, it's improper character evidence.  Her—I never brought up her character in direct examination.
>
> *The Court*:  Sustained.
>
> [*Defense Counsel*]:  Your Honor, just as a point of clarification—
>
> *The Court*:  Objection sustained.  Move on.

As an initial matter, defense counsel literally asked about the victim's character for "truthfulness."  Yet, it is apparent that defense counsel was not seeking to bolster the victim's credibility in violation of MRE 608(a)(2).  Rather, defense counsel expected CA's testimony to attack the victim's credibility by relating her reputation for *un*truthfulness.  Counsel revealed his strategy quite plainly in his opening statement:

> [O]ne great area of reasonable doubt in this trial is going to be [the victim's] lack of credibility.  I put it to you, I submit, I suggest to you that she's a liar.  I want to— I don't want to sugar coat it.  She is a liar.

Under MRE 608(a)(1), defense counsel was permitted to attack the victim's credibility by presenting evidence of her reputation for untruthfulness.  Instead, the trial court sustained the prosecutor's partially-incorrect objection and directed defense counsel to move on without providing requested clarification.  Thus, in spite of the literal language defense counsel employed in questioning CA, we conclude that this issue was preserved because "the substance of the evidence . . . was apparent from the context [direct examination of a defense witness regarding the accuser's reputation for truth-telling after defense counsel attacked her credibility] within which [the] question[] was asked."  MRE 103(a)(2).

We review a trial court's decision to exclude evidence for an abuse of discretion.  *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).  "The trial court abuses its discretion when its decision is outside the range of principled outcomes."  *Id*.  Once the proper foundation was laid, defense counsel was entitled to attack the victim's credibility by presenting CA's testimony regarding the victim's character for untruthfulness.  MRE 608(a).  Therefore, the trial court abused its discretion by excluding this evidence.

But "[a] preserved trial error in . . . excluding evidence is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative."  *King*, 297 Mich App at 472.  The error here was not

outcome determinative. *Id.* As in any trial, the victim's credibility was at issue and CA's testimony that the victim had a character of being untruthful was probative on that issue. See *People v Spaulding*, 332 Mich App 638, 857; 957 NW2d 843 (2020) ("Credibility of a witness is almost always at issue, and thus evidence bearing on that credibility is always relevant."). But the point that defendant's daughter supported him and did not believe the victim was plain from CA's testimony that, after something unusual happened during CA's later encounter with the victim and another man, CA ended her regular contact with the victim and no longer spoke to her. *People v Dobek*, 274 Mich App 58, 71; 274 NW2d 546 (2007) ("Given that [the police detective] was called as a witness by the prosecutor and that the criminal prosecution was pursued, the jurors surely understood that [the police detective] believed that the victim was telling the truth even without the disputed testimony."). Moreover, CA was not a witness to the assaults. And defendant admitted to slapping, hitting, punching, and beating the victim to Detective Martin. Defendant also admitted that it was "very possible that he did strangle" the victim, even though he could not remember doing so because he was so enraged. Defendant further told Detective Martin "he would be willing to take an assault charge." Thus, defendant himself partially corroborated the victim's testimony about the physical assault. Finally, the victim's numerous injuries, including those consistent with strangulation, were well documented by over 40 photographs and the testimony of the nurses who personally examined the victim and a responding police officer. Because any error here was not outcome determinative, defendant is not entitled to a new trial on this basis.

## IV. CUMULATIVE ERROR

Defendant's final argument is that even if the previously-discussed errors did not entitle him to a new trial, the cumulative effect of these errors deprived him of a fair trial. We disagree because the only error was harmless and there are no other errors to aggregate. See *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003) (noting that only errors causing unfair prejudice are aggregated for a cumulative error claim). Therefore, defendant was not denied a fair trial.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Anica Letica